# EXHIBIT F

## ALTERNATIVE SALE PROCEDURES
(No Stalking Horse)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EWGS INTERMEDIARY, LLC, et al.,[4] | ) Case No. 13-12876 (MFW) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## ALTERNATIVE SALE PROCEDURES[5]

The following procedures (the "Sale Procedures") shall govern the bidding on, and the sale at auction (the "Auction") of, the assets (the "Assets") of EWGS Intermediary, LLC and Edwin Watts Golf Shops, LLC (collectively, the "Sellers" or the "Debtors") in a single sale to a single purchaser or in several sales to more than one purchaser, pursuant to Debtors' Motion for Order: (A) Approving Sale Procedures and Bidding Protections in Connection with Sale of Certain of the Debtors' Assets Pursuant to Sections 363 and 365 of the Bankruptcy Code; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of Certain of the Debtors' Assets; (C) Approving Notice of Respective Dates, Times, and Places for Auction and for Hearing on Approval of (i) Sale of Assets, and (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Relief (the "Sale Procedures Motion"), filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on November [__], 2013. These Sale Procedures have been approved and authorized by an order of the Honorable [_____], United States Bankruptcy Judge, dated November [__], 2013 (the "Sale Procedures Order") in the chapter 11 cases of the Debtors (the "Cases"), which Cases were commenced on November 4, 2013 (the "Petition Date").

The Sellers contemplate the sale (the "Sale") of some or all of their assets (the "Assets") and the assumption of certain Assumed Liabilities to one or more bidders at Auction, including certain Assumed Contracts, free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens and Claims"), except as otherwise provided for pursuant to sections 363 and 365 of the Bankruptcy Code, such Liens and Claims to attach to the proceeds of the Sale of the Assets. The proposed transaction is subject to the approval of the Bankruptcy Court. The following Sale Procedures shall govern the Sale and any Auction held in connection therewith.

---

[4] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356). The address of the Debtors' corporate headquarters is 20 Hill Avenue NW, Fort Walton Beach, FL 32548.

[5] Terms capitalized but not defined herein shall have the meanings ascribed to them in the Agent Agreement Sale Agreement or in the Sale Procedures Motion as applicable [Docket No. __].

13

### Assets to be Sold

The Debtors shall consider bids for any and all of their Assets in a single bid to a single bidder or in multiple bids for parts of the Assets to multiple bidders, as hereinafter provided.

The Assets to be sold and subject to higher and better bids at Auction include, *inter alia*,

(i)    Real Property Leases relating to store locations, the distribution center and the corporate offices,

(ii)   all Inventory,

(iii)  all Intellectual Property and other Intangible Property,

(iv)   All personal property of Debtors,

(v)    all executory contracts for equipment, software and services, and

(vi)   any and all other asset of the Debtors.

### "As Is, Where Is"

The Sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates.

### Free Of Any And All Liens and Claims

All of the Debtors' right, title, and interest in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all Liens and Claims (other than Assumed Liabilities), including, but not limited to, all encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Debtors whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Bankruptcy Cases, whether imposed by agreement, understanding, law, equity or otherwise, and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these Bankruptcy Cases, whether known or unknown, such Liens and Claims to attach to the proceeds of the Sale of the Assets.

### I.    Access to Non-Public Information

To obtain access to all material non-public information concerning the Assets or liabilities, each interested person or entity (an "Interested Party") must deliver (unless previously delivered) to Debtors' advisor, Bayshore Partners, LLC ("Bayshore"), 401 E. Las Olas Blvd.,

Suite 2360, Ft. Lauderdale, FL 33301, Attn: Steve Zuckerman, (a) an executed confidentiality agreement, in form and substance satisfactory to the Debtors, which may be obtained from Bayshore, and (b) evidence of the Interested Party's source of capital or other financial ability to complete the contemplated transactions.

As soon as practical after delivery of the foregoing, the Debtors, after consultation with Bayshore, the Secured Lenders (defined below) and the professionals of the official committee of unsecured creditors, will determine in their reasonable business judgment whether an Interested Party will be reasonably likely to be able to complete and consummate its proposed transaction, and within the time frame contemplated herein, if it were the Successful Bidder. Thereafter, the Debtors will notify an Interested Party if the Debtors will afford such party access to due diligence material.

Each Qualified Bidder (as defined below) will be deemed to have acknowledged and will so represent in any Agreement (as defined below) that it had the opportunity to conduct any and all due diligence necessary prior to making any offer and that it has relied solely on its own independent review and that it did not rely on any written or oral statements, representations, promises or guaranties of the Debtors regarding the Debtors' business, or the completeness of any information provided by the Debtors in connection with its Bid (as defined below) or the bidding process.

## II.   Determining Qualified Bids and Qualified Bidders

(a)   Qualified Bid Requirements.

Each offer, solicitation or proposal (a "Bid") from any person or entity (each, a "Potential Bidder") must be in writing and satisfy each of the following conditions to be deemed a "Qualified Bid" and for the Potential Bidder to be deemed a "Qualified Bidder."

1.   Identification of Bidder.

The Bid shall identify the Potential Bidder and the applicable Potential Bidder's Sponsor (as defined below) (if any) and its representatives who are authorized to act on its behalf regarding the contemplated transaction.

2.   Executory Contracts and Unexpired Leases.

The Bid shall identify with particularity each and every executory contract and unexpired lease that is to be assumed and assigned pursuant to such Potential Bidder's Agreement and demonstrate to the reasonable satisfaction of the Debtors, in consultation with Bayshore, the Secured Lenders and professionals of the official committee of unsecured creditors, that the Potential Bidder has the financial ability and can otherwise comply with all future obligations under all such executory contracts and unexpired leases.

3.   Nature of Bids for Assets.

The Bid must be a good faith offer to purchase all or part of the Assets and provide for the payment and assumption of all or part of the Assumed Liabilities. A Bid shall include a clean and duly executed asset purchase agreement and/or agency agreement, or combination thereof (the "Agreement"). Bids shall not be conditioned on or subject to obtaining financing, shareholder approval or the outcome of due diligence, including environmental due diligence, by the Potential Bidder. Each Potential Bidder must agree that if it is selected as the Successful Bidder or the Back-Up Bidder (each as defined below), the Bid will remain binding and irrevocable until the Closing of the Sale.

4. Financial Capability.

The Bid shall state that the Potential Bidder is financially capable of consummating the transactions contemplated by the Agreement and that such bidder has the financial ability to fund and consummate the acquisition of the Assets or portions thereof and Assumed Liabilities at the Closing, and the Bid shall include such financial and other information as will allow the Debtors to make a reasonable determination, following consultation with Bayshore, the Secured Lenders and professionals of the official committee of unsecured creditors, as to such financial ability.

5. Corporate Authority.

The Bid shall contain written evidence of the valid and binding approval of the contemplated transaction by the Potential Bidder's Board of Directors (or comparable governing body having authority to bind the Potential Bidder); *provided, however*, that if the Potential Bidder is an entity specially formed for the purpose of acquiring the Assets, then the Potential Bidder must furnish evidence or other information reasonably acceptable to the Debtors, in consultation with Bayshore, the Secured Lenders and professionals of the official committee of unsecured creditors, of the approval of the contemplated transactions by the Board of Directors (or comparable governing body having authority to bind the Potential Bidder) of the controlling members or equity holder(s) of the Potential Bidder (the "Potential Bidder's Sponsor").

6. Form of Consideration.

The consideration proposed by the Bid must be in cash. The bid may include less than all or substantially all of the Assets (a "Portion Bid").

7. No Break-Up Fee, Etc.

The Bid may not request any break-up fee, termination fee, expense reimbursement or similar type of payment, nor shall any Qualified Bidder be entitled to any break-up fee, termination fee, expense reimbursement or similar type of payment. Any such Bid will automatically not qualify as a Qualified Bid. Moreover, neither the tendering of a Bid nor the determination that a Bid is either a Qualified Bid or the Successful Bid shall in any way entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.

8. Good Faith Deposit.

The Bid must be accompanied by a deposit in the amount of $1,000,000 or a lesser amount on partial Bids at the Debtors' discretion (each such deposit, a "Good Faith Deposit"). Each Good Faith Deposit shall be in the form of a bank check or wire transfer pursuant to instructions issued by the Debtors, and shall be treated according to the terms specified herein.

9. [Intentionally Omitted].

10. Bid Deadline.

Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before **December 2, 2013 at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") in writing, to Bayshore at the address specified above. The Debtors or Bayshore shall deliver all Bids, regardless of whether or not such Bids are Qualified Bids, to the Secured Lenders, and the professionals of the official committee of unsecured creditors no later than 24 hours after receipt of such Bids.

(b) Adequate Assurance Information of Potential Bidders.

Any person or entity interested in participating in the Auction who submits a Bid on or before the Bid Deadline must also submit to the Debtors on or before **December 2, 2013 at 4:00 p.m. (prevailing Eastern Time)** evidence of adequate assurance of future performance of such Potential Bidder as it relates to the unexpired leases and executory contract that are to be assumed and assigned pursuant to such Potential Bidder's Agreement.

(c) Qualified Bidders.

The Debtors, following consultation with Bayshore, the Secured Lenders, and professionals of the official committee of unsecured creditors, shall make a determination regarding whether a Bid is a Qualified Bid and shall notify Potential Bidders whether their Bids have been determined to be Qualified Bids by no later than **4:00 p.m. (prevailing Eastern time) on December 3, 2013**.

In making any such determination, the Debtors, along with Bayshore (and in consultation with the Secured Lenders (and any successor or assign), and the professionals of the official committee of unsecured creditors), may discuss or negotiate with, or seek clarification from, any Potential Bidders submitting Portion Bids, to among other things, determine how if the Portion Bid may be aggregated with other Portion Bids to become a Qualified Bid (sometimes hereinafter referred to as a "Portion Qualified Bid"). If a Portion Qualified Bid becomes the Successful Bid, it shall be a condition of closing any transaction contemplated by such Successful Bid that all transactions contemplated by such Successful Bid close. The Subordinated Lender shall be deemed a Qualified Bidder under the Sale Procedures with the right to participate at the Auction as such.

FOR THE AVOIDANCE OF DOUBT, POTENTIAL BIDDERS SHOULD BE AWARE THAT ANY POTENTIAL BIDDER THAT DOES NOT SUBMIT A QUALIFIED BID BY THE BID DEADLINE WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE BID DEADLINE, WHETHER BEFORE, DURING OR AFTER THE AUCTION.

(d) No Qualified Bids.

If no conforming Qualified Bids are received, the Debtors shall not hold an Auction and reserve the right to not proceed with the sale or to modify these procedures.

(e) Negotiation and Modification of Qualified Bids.

Between the Bid Deadline and the Auction, the Debtors, along with Bayshore (and in consultation with the Secured Lenders, and the professionals of the official committee of unsecured creditors), may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder. A Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein.

(f) Notice of the Auction

If the Debtors receive more than one Qualified Bid, the Auction will be held on **December 4, 2013 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel to the Debtors, Klehr, Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, DE, 19801, or at any such other location or time as designated by the Debtors in a notice to all Qualified Bidders. On or before **4:00 p.m. prevailing Eastern Time, on December 3, 2013**, the Debtors or Bayshore shall provide each Qualified Bidder:

1. written notice of the Auction; and

2. a copy of all Qualified Bids, including the Qualified Bid that the Debtors believes constitutes the highest or best offer and with which it intends to commence the Auction (the "Pre-Auction Successful Bid").

(g) Lender Non-Consent; Lender and Subordinated Lender Back-up Credit Bid/Lender Other Credit Bid; Special Procedures; Subordinated Lender Credit Bid

Lender has not consented to the sale of the Assets, unless all of the Obligations (as defined in the DIP Agreement (which includes all Obligations under the PNC Agreement, Lender Agreement and DIP Agreement (each as defined in the Sale Motion)) (collectively, the "Obligations") are indefeasibly paid in full to Lender in cash at closing. Lender shall have the right to submit a credit bid (a "Credit Bid") for the Sale Assets, upon such terms and conditions

18

as it may deem acceptable in its sole discretion, which Credit Bid (i) shall not be subject to the Sale Procedures set forth herein if and only if it is submitted solely for purposes of being the Back-up Bid (as defined below) in the event that the sale to the Prevailing Bidder (as defined below) either does not close or the net proceeds from such sale are insufficient to indefeasibly pay to Lender in full in cash the Obligations, and such Credit Bid expressly states that it is being submitted solely for such purposes (a "Lender Back-up Credit Bid"), and (ii) shall be subject to the Sale Procedures if such Credit Bid is submitted for any other purpose, or does not expressly state that it is being submitted for the sole purpose of being the Back-up Bid (a "Lender Other Credit Bid"). If Lender is approved by the Court as the Prevailing Bidder, or closes a sale as the Back-up Bid, Lender may offset all or a portion of the Obligations against the cash consideration to be paid to the Debtor at closing.

Subject to and in accordance with the terms of the Subordination Agreement, the Subordinated Lender shall have the right to credit bid for the Sale Assets, including without limitation, pursuant to sales occurring under Section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise.

## III. The Auction

(a) Attendance at and Participation in the Auction.

The Auction shall be conducted openly and all creditors of the Debtors' estates shall be permitted to attend; *provided, however*, that in order to attend the Auction, a creditor must advise the Debtors in writing no later than 48 hours prior to the Auction, provided, further, however, that the Debtors may seek relief from the Bankruptcy Court in the event that they object to such creditor's attendance. Without limiting the foregoing, the Debtors, Qualified Bidders, the U.S. Trustee, the Secured Creditors, and their respective representatives shall be entitled to attend the Auction. The Qualified Bidders must appear in person at the Auction, or through a duly authorized representative. The only parties eligible to participate in the Auction shall be Qualified Bidders who have submitted a Qualified Bid to the Debtors prior to the Bid Deadline.

(b) The Auction Process.

1. Bayshore to Conduct the Auction.

Bayshore shall direct and preside over the Auction. Only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction. The bidding at the Auction shall start at the purchase price stated in the Pre-Auction Successful Bid and continue, in one or more rounds of bidding, so long as during each round at least one Overbid (as defined below) is submitted. All Overbids shall be made and received on an open basis, such that all material terms of each Overbid will be fully disclosed to all other Qualified Bidders. The bidding at the Auction will be transcribed or videotaped and the Debtors shall maintain a transcript of all Bids made and announced at the Auction, including all Overbids and the Successful Bid.

2. No Collusion.

19

Each Qualified Bidder shall be required to acknowledge and agree in writing that it has not engaged (and agrees not to engage) in any collusion with respect to any Bids, the Auction, or the Sale; provided that it shall not be deemed collusion for the Qualified Bidders whose Bids comprise a Portion Qualified Bid to Overbid in concert.

3. Terms of Overbids.

An "Overbid" is any bid made at the Auction after the Debtors' announcement of the Pre-Auction Successful Bid, that is an increment of at least $100,000 (the "Bid Increment") greater than the immediately preceding Bid

The Auction may include individual negotiations with Qualified Bidders, subject to the foregoing requirement that Overbids be made and received on an open basis.

4. Valuation of Overbids.

To the extent that any Overbid includes consideration other than cash, the Debtors shall disclose their valuation of the total consideration offered in such Overbid (and the basis for their determination) in order to confirm that each Overbid meets the requisite bid increment and to provide a floor for further Overbids.

5. Additional Terms and Conditions

The Debtors may adopt additional rules for the Auction at or prior to the Auction that, in their reasonable discretion (following consultation with Bayshore, the Secured Lenders and professionals of the official committee of unsecured creditors), will better promote the goals of the Auction and the Debtors' duties and obligations as debtors-in-possession.

6. [Intentionally Omitted]

IV. **Identification of the Successful Bidder and Back-Up Bidder; Acceptance of Successful Bid**

(a) Identification of the Successful Bidder.

The Auction shall continue until there is only one offer or combination of offers that the Debtors determine is the highest and/or best offer from among the Qualified Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the Debtors may consider in the exercise of their reasonable business judgment (and in consultation with Bayshore, the Secured Lenders, and the professionals of the official committee of unsecured creditors), without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Agreement requested by each Qualified Bidder, and the net benefit to the Debtors' estates. The Qualified Bidder(s) submitting such Successful

Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser as are set forth in the applicable Agreement Agreement(s).

The Qualified Bidder with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their reasonable business judgment at the Auction (and in consultation with Bayshore, the Secured Lenders, and the professionals of the official committee of unsecured creditors), shall be required to serve as a Back-Up Bidder (the "Back-Up Bidder"). Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors and Back-Up Bidder will be authorized, but not required, to consummate the Sale without further order of the Bankruptcy Court. The obligation to close of the Back-Up Bidder hereunder shall expire on the earlier of the Closing of a Sale to the Successful Bidder or the Outside Date.

Within three (3) Business Days after adjournment of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

In announcing the Successful Bid and the Back-Up Bid, the Debtors shall announce the material terms of each Bid and the basis for determining the total consideration offered.

      (b)    Acceptance of Bid from Successful Bidder.

The Debtors presently intend to sell the Assets to the Successful Bidder, pursuant to the Agreement or Agreement(s), as applicable. The Debtors shall be bound by the Successful Bid only when such Bid has been approved by the Bankruptcy Court at the Sale Hearing (as defined below).

Except as otherwise provided in the Agreement or Agreement(s), as applicable, and to the fullest extent permitted by the jurisdiction of the Bankruptcy Court, all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all Liens and Claims, other than Assumed Liabilities, such Liens and Claims to attach to the proceeds.

**VI.**    **Treatment of Good Faith Deposits**

Except as otherwise provided herein, Good Faith Deposits, shall be returned to each bidder not selected by the Debtors as the Successful Bidder (other than the Back-Up Bidder) by no later than the fifth (5th) Business Day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held until the fifth (5th) Business Day following the Closing of the Sale to the Successful Bidder or the Outside Date, as applicable. The Good Faith Deposit of the Successful Bidder shall be held until the Closing of the Sale and applied in accordance with the Agreement or Purchase Agreement(s), as applicable. If the Successful Bidder or Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder or Back-Up Bidder, as applicable, the

21

Successful Bidder's Good Faith Deposit or Back-Up Bidder's Good Faith Deposit, as applicable, shall be forfeited to the Debtors.

PHIL1 3167187v.6

## VII. The Sale Hearing

The Successful Bid will be subject to approval by the Court. The Sale Hearing will take place on **December 5, 2013 at [___] (prevailing Eastern Time)** before the Honorable [_____], United States Bankruptcy Court for the District of Delaware, 824 Market Street, [__] Floor, Courtroom [__], Wilmington, DE, 19801. The Sale Hearing may be adjourned with the consent of the Successful Bidder from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.