## Exhibit A

## Revised Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EWGS INTERMEDIARY, LLC, *et al.*, [1] | ) | Case No. 13-12876 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Related to Docket No. 24** |

### ORDER (A) AUTHORIZING AND SCHEDULING AN AUCTION AND HEARING TO APPROVE THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS, (B) APPROVING THE SALE PROCEDURES FOR SUCH ASSETS, (C) APPROVING THE FORM AND SCOPE OF NOTICE OF THE SALE PROCEDURES AND AUCTION, (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) GRANTING RELATED RELIEF

Upon consideration of the motion (the "***Motion***")[2] of the above-captioned Debtors and Debtors in possession (the "***Debtors***"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002–1 and 6004–1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), for entry of an order authorizing and scheduling an auction and hearing to approve the Sale of substantially all of the assets of the Debtors, approving the Sale Procedures for Auction and Sale, approving the scope and manner of notice, establishing procedures relating to assumption and assignment of the Assumed Contracts; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, their creditors and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356).  The address of the Debtors' corporate headquarters is 20 Hill Avenue NW, Fort Walton Beach, FL 32548.

[2]    All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the Sale Procedures attached hereto.

other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of this case; and after due deliberation thereon; and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS THAT:[3]

A.    This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, (ii) Rules 2002, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules, and (iii) Rule 6004-1 of the Local Rules.

C.    Notice of the Motion having been provided to the parties listed therein is sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice is required except as set forth herein with respect to the alternative sale procedures, as modified and attached hereto as **Exhibit A** (the "*Sale Procedures*"), Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.    The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including without limitation, (i) approval of the Sale Procedures, (ii) the scheduling of the Bid Deadline, Auction, and Sale Hearing for the Sale of the Assets; (iii) the establishment of procedures to fix the Cure Amounts to be paid under section

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

365 of the Bankruptcy Code in connection with the assumption and assignment of the Assumed

Contracts, and (iv) approval and authorization to serve the Sale Notice and the Cure Notice.

E.     The Sale Procedures are reasonable and appropriate and represent the best method

for maximizing value for the benefit of the Debtors, their estates, and creditors.

H.     The Sale Notice is appropriate and reasonably calculated to provide all interested

parties with timely and proper notice of the Auction, Sale, Sale Hearing, and Sale Procedures.

I.     The Cure Notice is appropriate and reasonably calculated to provide all

counterparties to the Assumed Contracts with proper notice of the potential assumption and

assignment of the Assumed Contracts and the proposed Cure Amounts with respect thereto.

K.     The entry of this Order and the granting of the relief provided herein is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest.

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED in all respects to the extent provided herein.

2.     All objections, if any, to the Motion or the relief provided herein that have not

been withdrawn, waived, or settled, as announced to the Court at, or prior to, the hearing on the

Motion or any adjournment thereof or set forth in a stipulation presented to the Court, and all

reservations of rights included therein, are hereby overruled on the merits.

3.     The Sale Procedures, in substantially the form attached hereto as **Exhibit A**, are

APPROVED and the terms thereof are incorporated herein as if fully set forth herein and shall

apply with respect to the proposed Sale of the Assets.  The Debtors are authorized to take all

actions necessary or appropriate to implement the Sale Procedures.

3

4.      As further described in the Sale Procedures, the deadline for submitting Bids for the Assets is **December [__], 2013 at 4:00 p.m. (prevailing Eastern Time)** (the "***Bid Deadline***").

5.      Pursuant to Bankruptcy Rule 6004(f)(1), the Debtors are authorized to conduct an Auction in respect of the Assets pursuant to the terms and conditions set forth herein and in the Sale Procedures.  If Qualified Bids are received by the Debtors in accordance with the Sale Procedures, the Auction shall take place on **December [__], 2013 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Klehr Harrison Harvey Branzburg LLP, 1835 Market Street, Suite 1400, Philadelphia, PA 19103, or such other location and time as designated by the Debtors in a notice to all Qualified Bidders.  If, however, no Qualified Bid is received, the Auction will not be held.

6.      Each Qualified Bidder at the Auction will be required to confirm that it has not engaged in any collusion with respect to its bidding on the Assets.

7.      The Auction will be conducted openly and all creditors and parties-in-interest of the Debtors are permitted to attend; *provided*, *however*, that in order to attend the Auction, a creditor or other party-in-interest must advise the Debtors and the Purchaser in writing no later than 48 hours prior to the Auction, provided, further, however, that the Debtors may seek relief from the Bankruptcy Court in the event that they object to such creditor's or other party-in-interest's attendance; provided, further, however, that notwithstanding anything herein to the contrary, Qualified Bidders, the U.S. Trustee, the Secured Creditors, the Committee members (including non-voting members) and their respective representatives shall be entitled to attend the Auction without objection by the Debtors.

8.      Bidding at the Auction will be transcribed.

4

PHIL1 3222111v.3

9.      The Sale Hearing is scheduled to be held on **December [__], 2013 at [_____] __.m. (prevailing Eastern Time)** before the Honorable Mary F. Walrath, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th  Floor, Courtroom 4, Wilmington, DE, 19801.  The Debtors may, in their discretion with consultation with the Secured Lenders and the professionals of the Committee, seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Sale to the the Successful Bidder, on terms and conditions consistent with the Agreement (as defined in the Sale Procedures).

10.     The form and scope of the Sale Notice attached hereto as **<u>Exhibit B</u>** is reasonable and appropriate and is hereby APPROVED and incorporated herein as if fully set forth herein.

11.     The Debtors are hereby authorized and directed to serve copies of this Order and the Sale Notice upon: (a) the Office of the United States Trustee for the District of Delaware (the "***U.S. Trustee***"), (b) counsel to the Creditors' Committee; (c) counsel to the secured lenders, (d) counsel to PNC as lender under the Debtors' debtor-in-possession loan facility (the "***DIP Facility***"); (e) parties entitled to receive notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002; (f) all entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in or on the Assets, (g) all counterparties to the Assumed Contracts, (h) the Internal Revenue Service and all state/local taxing authorities in jurisdictions where the Debtors have or may have any tax liability; (i) all relevant regulatory authorities, and (j) all persons who have expressed an interest in acquiring the Assets, no later than one (1) business day after entry of this Order, by first class mail, postage prepaid, or other method reasonably calculated to provide notice of the Sale and the Auction, and such service shall constitute good and sufficient notice of

5

the Sale of the Assets, this Order, the Auction, the Sale Hearing and all proceedings to be held thereon.

12.     The Debtors are authorized at their option, with (i) the consent of PNC and (ii) after consultation with the Subordinated Lender and the professionals to the Committee, but not directed, to enter into a stalking horse agreement prior to the Auction that includes the provision for a break-up fee to be paid to such proposed stalking horse and seek the approval of such break-up fee at the Sale Hearing.  For the avoidance of doubt, nothing in this order shall be construed to grant approval for such potential break-up fee and all issues relating to such break-up fee, if applicable, are reserved for the Sale Hearing.

13.     The form and scope of the Cure Notice attached to the Motion as **<u>Exhibit C</u>** is reasonable and appropriate and is hereby APPROVED and incorporated herein as if fully set forth herein.

14.     No later than November [**__**], 2013, the Debtors shall file and serve by first class mail or hand delivery a Cure Notice on each counterparty to each executory contract and unexpired lease that may be assumed and assigned in the sale (each an "***Assumed Contract***"). Such Cure Notice is without prejudice to the Debtors ability to designate which contract shall be assumed and assigned in relation to the Sale.  Provision of the Cure Notice to a counterparty shall not be an admission that such lease or contract is an unexpired lease or executory contract is capable of assumption or assignment or that such lease or contract will be assumed and assigned.

15.     All objections, if any, to the proposed assumption and assignment of the Assumed Contracts, including but not limited to, objections to the Cure Amounts, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) to the extent it challenges a

scheduled Cure Amount, set forth the cure amount being claimed by the objecting party and provide appropriate documentation to support such party's objection; (d) be filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Flr., Wilmington, DE, 19801 by **4:00 p.m. (prevailing Eastern Time) on [_____], 2013** (the "***Cure Objection Deadline***"); and (e) be served upon (i) counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE, 19801, Attn: Domenic E. Pacitti, Esq., (email: dpacitti@klehr.com); (ii) the U.S. Trustee, Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE, 19801, Attn:  David Buchbinder, Esq.; (iii) proposed counsel to the official committee of unsecured creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Lawrence C. Gottlieb, Esq. and Jay R. Indyke, Esq. and proposed Delaware counsel to the official committee of unsecured creditors, Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Christopher Samis, Esq.; and (iv) counsel to the Debtors' prepetition secured lender and debtor in possession lender, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn; Regina Stango Kelbon, Esq., so as to be actually received no later than the Cure Objection Deadline.

16.     All objections, if any, to the proposed assumption and assignment of the Assumed Contracts relating solely to the adequate assurance of future performance, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) specify the specific challenge to the proposed adequate assurance by the objecting party; (d) be filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Flr., Wilmington, DE, 19801 by **4:00 p.m. (prevailing Eastern Time) on [_____], 2013** (the "***Adequate Assurance Objection Deadline***"); and (e) be served upon (i) counsel to the Debtors, Klehr

7

Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE, 19801, Attn: Domenic E. Pacitti, Esq., (email: dpacitti@klehr.com); (ii) the U.S. Trustee, Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE, 19801, Attn: David Buchbinder, Esq.; (iii) proposed counsel to the official committee of unsecured creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Lawrence C. Gottlieb, Esq. and Jay R. Indyke, Esq. and proposed Delaware counsel to the official committee of unsecured creditors, Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Christopher Samis, Esq.; and (iv) counsel to the Debtors' prepetition secured lender and debtor in possession lender, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn; Regina Stango Kelbon, Esq., so as to be actually received no later than the Adequate Assurance Objection Deadline.

17.     If no objection is timely received prior to the Cure Objection Deadline or the Adequate Assurance Objection Deadline, as applicable, the Cure Amount for any Assumed Contract set forth in the  Cure Notice shall control as of the date of such notice without regard to anything to the contrary in such Assumed Contract or any other document and the adequate assurance of future performance shall be deemed adequate.  In the event a party to an Assumed Contract files a timely objection asserting a higher cure amount than the Cure Amount, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such Assumed Contract will be determined at the Sale Hearing or such other date and time as may be fixed by this Court.  All other objections to the proposed assumption and assignment of the Assumed Contracts will be heard at the Sale Hearing.

18.    Unless otherwise agreed to between the parties to the Assumed Contracts and the Debtors, the Debtors shall pay the Cure Amounts at Closing (which amounts, for the avoidance of doubt, shall be fully funded by the Successful Bidder); provided, that in the event that any Cure Amount shall then be in dispute, the Debtors shall pay to the applicable counterparty the portion thereof, if any, that is not in dispute, and the balance, if any (which shall be deposited with and held in a segregated account by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties), shall be paid upon resolution of such dispute.

19.    Promptly upon the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court and serve a notice identifying the Successful Bidder.

20.    The Debtors shall, on or before December [___], 2013, serve by overnight mail, facsimile, email, or hand delivery to any counterparties of contracts or unexpired lease to be assumed and assigned to the Successful Bidder under such bidder's Agreement, evidence of adequate assurance of future performance of the Successful Bidder pursuant to section 365 of the Bankruptcy Code, which such evidence may include, among other things: (i) the identity of the Successful Bidder, (ii) evidence of financial wherewithal of the Successful Bidder, and (iii) all documents and other evidence of adequate assurance of future performance by the Successful Bidder including, without limitation, a contact person for the proposed assignee that counterparties may directly contact in connection with the adequate assurance of future performance.  The Debtors are authorized to provide the adequate assurance information to counterparties on a confidential basis and, by accepting such information, counterparties are required to keep such adequate assurance information confidential without the need to enter into a separate confidentiality agreement.

9

21.     Responses or objections, if any, to the relief requested in the Sale Motion (other than objections to Cure Amounts or adequate assurance of future performance as it relates to the Successful Bidder), including, but not limited to, the Debtors' request to approve the Sale of the Assets, must be (a) in writing; (b) state with specificity the basis therefore; (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Flr., Wilmington, DE, 19801 by **4:00 p.m. (prevailing Eastern Time) on [_____], 2013** (the "*Objection Deadline*"); and (e) be served upon (i) the Debtors, 20 Hill Avenue NW, Fort Walton Beach, Florida 32548 Attn: Lynda K. Barr, Chief Financial Officer; (ii) proposed counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Domenic E. Pacitti, Esq.; (iii) counsel to the Debtors' prepetition secured lender and debtor in possession lender, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn; Regina Stango Kelbon, Esq.; (iv) proposed counsel to the official committee of unsecured creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Lawrence C. Gottlieb, Esq. and Jay R. Indyke, Esq. and proposed Delaware counsel to the official committee of unsecured creditors, Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Christopher Samis; and (v) the office of the United States Trustee for the District of Delaware, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: David Buchbinder, Esq., so as to be actually received no later than the Objection Deadline.

22.     Notwithstanding Bankruptcy Rule 6004, 6006(d), 7062 or 9014, if applicable, or any other Local Rule or otherwise, this Sale Order shall not be stayed for 14-days after the entry

10

hereof, but shall be effective and enforceable immediately upon entry pursuant to Bankruptcy Rule 6004(h).

24.     Any conflict between the terms and provisions of this Order and the Purchase Agreement shall be resolved in favor of this Order.  To the extent that the Sale Procedures Motion; Sale Procedures or Cure Notice is inconsistent with this Order, the provisions of this Order shall control.

25.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Date:  November ___, 2013
Wilmington, Delaware

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge

11

# EXHIBIT A

# SALE PROCEDURES

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EWGS INTERMEDIARY, LLC, *et al.*, [1] | ) | Case No. 13-12876 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## SALE PROCEDURES[2]

The following procedures (the "Sale Procedures") shall govern the bidding on, and the sale at auction (the "Auction") of, the assets (the "Assets") of EWGS Intermediary, LLC and Edwin Watts Golf Shops, LLC (collectively, the "Sellers" or the "Debtors") in a single sale to a single purchaser or in several sales to more than one purchaser, pursuant to Debtors' Motion for Order:  (A) Approving Sale Procedures and Bidding Protections in Connection with Sale of Certain of the Debtors' Assets Pursuant to Sections 363 and 365 of the Bankruptcy Code; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of Certain of the Debtors' Assets; (C) Approving Notice of Respective Dates, Times, and Places for Auction and for Hearing on Approval of (i) Sale of Assets, and (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Other Relief (the "Sale Procedures Motion"), filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on November 5, 2013.  These Sale Procedures have been approved and authorized by an order of the Honorable Mary F. Walrath, United States Bankruptcy Judge, dated November [__], 2013 (the "Sale Procedures Order") in the chapter 11 cases of the Debtors (the "Cases"), which Cases were commenced on November 4, 2013 (the "Petition Date").

The Sellers contemplate the sale (the "Sale") of some or all of their assets (the "Assets") and the assumption of certain Assumed Liabilities to one or more bidders at Auction , including certain Assumed Contracts, free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens and Claims"), except as otherwise provided for pursuant to sections 363 and 365 of the Bankruptcy Code, such Liens and Claims to attach to the proceeds of the Sale of the Assets.  The proposed transaction is subject to the approval of the Bankruptcy Court.  The following Sale Procedures shall govern the Sale and any Auction held in connection therewith.

On November 12, 2013, the official committee of unsecured creditors (the "Committee") was appointed by the Office of the United States Trustee for the District of Delaware.  The Committee reserves all of its rights to object to object to any Credit Bid (defined below) of the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356).  The address of the Debtors' corporate headquarters is 20 Hill Avenue NW, Fort Walton Beach, FL 32548.

[2]   Terms capitalized but not defined herein shall have the meanings ascribed to them in the Sale Procedures Motion [Docket No. 24].

Subordinated Lender.  Moreover, nothing herein shall prejudice the Committee's rights to challenge the extent, validity, priority, nature and/or character of the liens and claims of the Secured Lenders in accordance with the Final DIP Order.

### Assets to be Sold

The Debtors shall consider bids for any and all of their Assets in a single bid to a single bidder or in multiple bids for parts of the Assets to multiple bidders, as hereinafter provided.

The Assets to be sold and subject to higher and better bids at Auction include, *inter alia*,

   (i)      Real Property Leases relating to store locations, the distribution center and the corporate offices,

   (ii)     all Inventory,

   (iii)    all Intellectual Property and other Intangible Property,

   (iv)     All personal property of Debtors,

   (v)      all executory contracts for equipment, software and services, and

   (vi)     any and all other asset of the Debtors.

### "As Is, Where Is"

The Sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates.

### Free Of Any And All Liens and Claims

All of the Debtors' right, title, and interest in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all Liens and Claims (other than Assumed Liabilities), including, but not limited to, all encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Debtors whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Bankruptcy Cases, whether imposed by agreement, understanding, law, equity or otherwise, and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these Bankruptcy Cases, whether known or unknown, such Liens and Claims to attach to the proceeds of the Sale of the Assets.

2

## I.     Access to Non-Public Information

To obtain access to all material non-public information concerning the Assets or liabilities, each interested person or entity (an "Interested Party") must deliver (unless previously delivered) to Debtors' advisor, Bayshore Partners, LLC ("Bayshore"), 401 E. Las Olas Blvd., Suite 2360, Ft. Lauderdale, FL  33301, Attn: Steve Zuckerman szuckerman@farlieturner.com, (a) an executed confidentiality agreement, in form and substance satisfactory to the Debtors, which may be obtained from Bayshore, and (b) evidence of the Interested Party's source of capital or other financial ability to complete the contemplated transactions.

As soon as practical after delivery of the foregoing, the Debtors, after consultation with Bayshore, the Secured Lenders[3] (defined below) and the professionals of the Committee, will determine in their reasonable business judgment whether an Interested Party will be reasonably likely to be able to complete and consummate its proposed transaction, and within the time frame contemplated herein, if it were the Successful Bidder.  Thereafter, no later than one (1) business days following the delivery of the foregoing by an Interested Party, the Debtors will notify an Interested Party if the Debtors will afford such party access to due diligence material.

Each Qualified Bidder (as defined below) will be deemed to have acknowledged and will so represent in any Agreement (as defined below) that it had the opportunity to conduct any and all due diligence necessary prior to making any offer and that it has relied solely on its own independent review and that it did not rely on any written or oral statements, representations, promises or guaranties of the Debtors regarding the Debtors' business, or the completeness of any information provided by the Debtors in connection with its Bid (as defined below) or the bidding process.

## II.     Determining Qualified Bids and Qualified Bidders

(a)     Qualified Bid Requirements.

Unless otherwise agreed to by the Debtors, in consultation with the Secured Lenders and the professionals of the Committee, each offer, solicitation or proposal (a "Bid") from any person or entity (each, a "Potential Bidder") must be in writing and satisfy each of the following conditions to be deemed a "Qualified Bid" and for the Potential Bidder to be deemed a "Qualified Bidder."

1.     Identification of Bidder.

---

[3]     Notwithstanding anything herein to the contrary, to the extent that the Subordinated Lender (or any successor and assign) submits a Credit Bid (defined below) or a Bid, unless and until the Subordinated Lender (or any successor and assign) abandons its Credit Bid or drops out of the Auction, the Debtors shall not consult with the Subordinated Lender, and the term "Secured Lenders" shall be deemed to include only the Debtors' prepetition first lien senior lenders.

The Bid shall identify the Potential Bidder and the applicable Potential Bidder's Sponsor (as defined below) (if any) and its representatives who are authorized to act on its behalf regarding the contemplated transaction.

2.    <u>Executory Contracts and Unexpired Leases</u>.

The Bid shall identify with particularity each and every executory contract and unexpired lease that is to be assumed and assigned pursuant to such Potential Bidder's Agreement and demonstrate to the reasonable satisfaction of the Debtors, in consultation with Bayshore, the Secured Lenders and professionals of the Committee, that the Potential Bidder has the financial ability and can otherwise comply with all future obligations under all such executory contracts and unexpired leases.

3.    <u>Nature of Bids for Assets</u>.

The Bid must be a good faith offer to purchase all or part of the Assets and provide for the payment and assumption of all or part of any liabilities proposed to be assumed (the "<u>Assumed Liabilities</u>"). A Bid shall include a clean and duly executed asset purchase agreement and/or agency agreement, or combination thereof (the "<u>Agreement</u>"). Bids shall not be conditioned on or subject to obtaining financing, shareholder approval or the outcome of due diligence, including environmental due diligence, by the Potential Bidder. Each Potential Bidder must agree that if it is selected as the Successful Bidder or the Back-Up Bidder (each as defined below), the Bid will remain binding and irrevocable until the Closing of the Sale.

4.    <u>Financial Capability</u>.

The Bid shall state that the Potential Bidder is financially capable of consummating the transactions contemplated by the Agreement and that such bidder has the financial ability to fund and consummate the acquisition of the Assets or portions thereof and Assumed Liabilities at the Closing, and the Bid shall include such financial and other information as will allow the Debtors to make a reasonable determination, following consultation with Bayshore, the Secured Lenders and professionals of the Committee, as to such financial ability.

5.    <u>Corporate Authority</u>.

The Bid shall contain written evidence of the valid and binding approval of the contemplated transaction by the Potential Bidder's Board of Directors (or comparable governing body having authority to bind the Potential Bidder); *provided*, *however*, that if the Potential Bidder is an entity specially formed for the purpose of acquiring the Assets, then the Potential Bidder must furnish evidence or other information reasonably acceptable to the Debtors, in consultation with Bayshore, the Secured Lenders and professionals of the Committee, of the approval of the contemplated transactions by the Board of Directors (or comparable governing body having authority to bind the Potential Bidder) of the controlling members or equity holder(s) of the Potential Bidder (the "<u>Potential Bidder's Sponsor</u>").

6.    <u>Form of Consideration</u>.

4

The consideration proposed by the Bid must be in cash.  To the extent that the consideration includes assumption of liabilities, the Debtors, in consultation with Bayshore, the Secured Lenders and professionals of the Committee, will value such consideration in their reasonable discretion.  The bid may include less than all or substantially all of the Assets (a "Portion Bid").

7.     No Break-Up Fee, Etc.

The Bid may not request any break-up fee, termination fee, expense reimbursement or similar type of payment, nor shall any Qualified Bidder be entitled to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Any such Bid will automatically not qualify as a Qualified Bid.  Moreover, neither the tendering of a Bid nor the determination that a Bid is either a Qualified Bid or the Successful Bid shall in any way entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Notwithstanding the foregoing three sentences and anything herein to the contrary, prior to the Auction, the Debtors reserve all rights to grant a break-up fee and/or expense reimbursement to any Qualified Bidder if the Debtors, with (i) the consent of PNC and (ii) after consultation with the Subordinated Lender and the professionals to the Committee, determine that doing so would be in the best interests of the estates.  Such break-up fee would be subject to approval by the Court at the Sale Hearing.

8.     Good Faith Deposit.

The Bid must be accompanied by a deposit in the amount of $1,000,000 or a lesser amount on partial Bids at the Debtors' discretion, in consultation with the Secured Lenders and the professionals of the Committee (each such deposit, a "Good Faith Deposit").  Each Good Faith Deposit shall be in the form of a bank check or wire transfer pursuant to instructions issued by the Debtors, and shall be treated according to the terms specified herein.

9.     [Intentionally Omitted].

10.    Bid Deadline.

Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before **December [__], 2013 at 4:00 p.m. (prevailing Eastern Time**) (the "Bid Deadline") in writing, to Bayshore at the address specified above.  The Debtors or Bayshore shall deliver all Bids, regardless of whether or not such Bids are Qualified Bids, to the Secured Lenders, and the professionals of the Committee no later than 24 hours after receipt of such Bids.

(b)    Adequate Assurance Information of Potential Bidders.

Any person or entity interested in participating in the Auction who submits a Bid on or before the Bid Deadline must also submit to the Debtors on or before **December [__], 2013 at 4:00 p.m. (prevailing Eastern Time)** evidence of adequate assurance of future performance of such Potential Bidder as it relates to the unexpired leases and executory contract that are to be

5

assumed and assigned pursuant to such Potential Bidder's Agreement.  The Debtors or Bayshore shall deliver adequate assurance of future performance of each Potential Bidder to the Secured Lenders and the professionals of the Committee no later than 24 hours after receipt of such information.

(c)     <u>Qualified Bidders</u>.

The Debtors, following consultation with Bayshore, the Secured Lenders, and professionals of the official committee of unsecured creditors, shall make a determination regarding whether a Bid is a Qualified Bid and shall notify Potential Bidders whether their Bids have been determined to be Qualified Bids by no later than **4:00 p.m. (prevailing Eastern time) on December [__], 2013**.

In making any such determination, the Debtors, along with Bayshore (and in consultation with the Secured Lenders (and any successor or assign), and the professionals of the official committee of unsecured creditors), may discuss or negotiate with, or seek clarification from, any Potential Bidders submitting Portion Bids, to among other things, determine how if the Portion Bid may be aggregated with other Portion Bids to become a Qualified Bid (sometimes hereinafter referred to as a "<u>Portion Qualified Bid</u>").  If a Portion Qualified Bid becomes the Successful Bid, it shall be a condition of closing any transaction contemplated by such Successful Bid that all transactions contemplated by such Successful Bid close.  The Subordinated Lender shall be deemed a Qualified Bidder under the Sale Procedures with the right to participate at the Auction as such.

**FOR THE AVOIDANCE OF DOUBT, UNLESS OTHERWISE AGREED TO BY THE DEBTORS IN CONSULTATION WITH THE SECURED LENDERS AND THE PROFESSIONALS OF THE COMMITTEE, POTENTIAL BIDDERS SHOULD BE AWARE THAT ANY POTENTIAL BIDDER THAT DOES NOT SUBMIT A QUALIFIED BID BY THE BID DEADLINE WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE BID DEADLINE, WHETHER BEFORE, DURING OR AFTER THE AUCTION.**

(d)     <u>No Qualified Bids</u>.

If no conforming Qualified Bids are received, the Debtors shall not hold an Auction and reserve the right to not proceed with the sale or to modify these procedures, in consultation with the Secured Lenders and the professionals of the Committee.

(e)     <u>Negotiation and Modification of Qualified Bids</u>.

Between the Bid Deadline and the Auction, the Debtors, along with Bayshore (and in consultation with the Secured Lenders, and the professionals of the Committee), may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder.  A Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to

increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein.

(f)    Notice of the Auction

If the Debtors receive more than one Qualified Bid, the Auction will be held on **December [__], 2013 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel to the Debtors, Klehr, Harrison Harvey Branzburg LLP, 1835 Market Street, Suite 1400, Philadelphia, PA 19103, or at any such other location or time as designated by the Debtors in a notice to all Qualified Bidders.  On or before **4:00 p.m. prevailing Eastern Time, on December [__], 2013**, the Debtors or Bayshore shall provide each Qualified Bidder:

1.    written notice of the Auction; and

2.    a copy of all Qualified Bids, including the Qualified Bid that the Debtors believes constitutes the highest or best offer and with which it intends to commence the Auction (the "Pre-Auction Successful Bid").

(g)    Lender Non-Consent; Lender and Subordinated Lender Back-up Credit Bid/Lender Other Credit Bid; Special Procedures; Subordinated Lender Credit Bid

Lender has not consented to the sale of the Assets, unless all of the Obligations (as defined in the DIP Agreement (which includes all Obligations under the PNC Agreement, Lender Agreement and DIP Agreement (each as defined in the Sale Motion)) (collectively, the "Obligations") are indefeasibly paid in full to Lender in cash at closing, which payment is subject to the provisions of the Final DIP Order.  Lender shall have the right to submit a credit bid (a "Credit Bid") for the Sale Assets, upon such terms and conditions as it may deem acceptable in its sole discretion, which Credit Bid (i) shall not be subject to the Sale Procedures set forth herein if and only if it is submitted solely for purposes of being the Back-up Bid (as defined below) in the event that the sale to the Prevailing Bidder (as defined below) either does not close or the net proceeds from such sale are insufficient to indefeasibly pay to Lender in full in cash the Obligations, and such Credit Bid expressly states that it is being submitted solely for such purposes (a "Lender Back-up Credit Bid"), and (ii) shall be subject to the Sale Procedures if such Credit Bid is submitted for any other purpose, or does not expressly state that it is being submitted for the sole purpose of being the Back-up Bid (a "Lender Other Credit Bid").  If Lender is approved by the Court as the Prevailing Bidder, or closes a sale as the Back-up Bid, Lender may offset all or a portion of the Obligations against the cash consideration to be paid to the Debtor at closing.

Subject to and in accordance with the terms of the Subordination Agreement, the Subordinated Lender shall have the right to credit bid for the Sale Assets, including without limitation, pursuant to sales occurring under Section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise; *provided, however*, the Committee reserves all rights to object to any Credit Bid submitted by the Subordinated Lender, whether prior to the Auction, at the

7

Auction or, if the Subordinated Lender's Credit Bid is the Successful Bid (or the only Bid), at the Sale Hearing.

### III. The Auction

(a)     <u>Attendance at and Participation in the Auction</u>.

The Auction shall be conducted openly and all creditors of the Debtors' estates shall be permitted to attend; *provided*, *however*, that in order to attend the Auction, a creditor must advise the Debtors in writing no later than 48 hours prior to the Auction, provided, further, however, that the Debtors may seek relief from the Bankruptcy Court in the event that they object to such creditor's attendance.  Without limiting the foregoing, the Debtors, Qualified Bidders, the U.S. Trustee, the Secured Lenders, the Committee members (including non-voting members) and their respective representatives shall be entitled to attend the Auction without objection by the Debtors.  The Qualified Bidders must appear in person at the Auction, or through a duly authorized representative.  The only parties eligible to participate in the Auction shall be Qualified Bidders who have submitted a Qualified Bid to the Debtors prior to the Bid Deadline.

(b)     <u>The Auction Process</u>.

1.     <u>Bayshore to Conduct the Auction</u>.

Bayshore shall direct and preside over the Auction.  Only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction.  The bidding at the Auction shall start at the purchase price stated in the Pre-Auction Successful Bid and continue, in one or more rounds of bidding, so long as during each round at least one Overbid (as defined below) is submitted.  All Overbids shall be made and received on an open basis, such that all material terms of each Overbid will be fully disclosed to all other Qualified Bidders.  The bidding at the Auction will be transcribed or videotaped and the Debtors shall maintain a transcript of all Bids made and announced at the Auction, including all Overbids and the Successful Bid.

2.     <u>No Collusion</u>.

Each Qualified Bidder shall be required to acknowledge and agree in writing that it has not engaged (and agrees not to engage) in any collusion with respect to any Bids, the Auction, or the Sale; provided that it shall not be deemed collusion for the Qualified Bidders whose Bids comprise a Portion Qualified Bid to Overbid in concert.

3.     <u>Terms of Overbids</u>.

An "Overbid" is any bid made at the Auction after the Debtors' announcement of the Pre-Auction Successful Bid, that is in increments to be announced at the Auction (the "<u>Bid Increment</u>") greater than the immediately preceding Bid.

The Auction may include individual negotiations with Qualified Bidders, subject to the foregoing requirement that Overbids be made and received on an open basis.

8

4.      <u>Valuation of Overbids</u>.

To the extent that any Overbid includes consideration other than cash, the Debtors shall disclose their valuation of the total consideration offered in such Overbid (and the basis for their determination, which determination shall be made in consultation with the Secured Lenders and the Professionals of the Committee) in order to confirm that each Overbid meets the requisite bid increment and to provide a floor for further Overbids.

5.      <u>Additional Terms and Conditions</u>

The Debtors may adopt additional rules for the Auction at or prior to the Auction that, in their reasonable discretion (following consultation with Bayshore, the Secured Lenders and professionals of the Committee), will better promote the goals of the Auction and the Debtors' duties and obligations as debtors-in-possession.

6.      <u>[Intentionally Omitted]</u>

**IV.   Identification of the Successful Bidder and Back-Up Bidder; Acceptance of Successful Bid**

(a)      <u>Identification of the Successful Bidder</u>.

The Auction shall continue until there is only one offer or combination of offers that the Debtors determine is the highest and/or otherwise best offer from among the Qualified Bidders submitted at the Auction (the "<u>Successful Bid</u>").  In making this decision, the Debtors may consider in the exercise of their reasonable business judgment (and in consultation with Bayshore, the Secured Lenders, and the professionals of the Committee), without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Agreement requested by each Qualified Bidder, and the net benefit to the Debtors' estates.  The Qualified Bidder(s) submitting such Successful Bid shall become the "<u>Successful Bidder</u>," and shall have such rights and responsibilities of a purchaser as are set forth in the applicable Agreement Agreement(s).

The Qualified Bidder with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their reasonable business judgment at the Auction (and in consultation with Bayshore, the Secured Lenders, and the professionals of the Committee, shall be required to serve as a Back-Up Bidder (the "<u>Back-Up Bidder</u>").  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors and Back-Up Bidder will be authorized, but not required, to consummate the Sale without further order of the Bankruptcy Court.  The obligation to close of the Back-Up Bidder hereunder shall expire on the earlier of the Closing of a Sale to the Successful Bidder or the Outside Date.

9

Within three (2) Business Days after adjournment of the Auction, but in no event later than the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

In announcing the Successful Bid and the Back-Up Bid, the Debtors shall announce the material terms of each Bid and the basis for determining the total consideration offered.

(b)     Acceptance of Bid from Successful Bidder.

The Debtors shall be bound by the Successful Bid only if and when the Debtors present such Bid to the Bankruptcy Court at the Sale Hearing (as defined below) and such Bid is approved by the Bankruptcy Court.

Except as otherwise provided in the Agreement or Agreement(s), as applicable, and to the fullest extent permitted by the jurisdiction of the Bankruptcy Court, all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all Liens and Claims, other than Assumed Liabilities, such Liens and Claims to attach to the proceeds.

## VI.   Treatment of Good Faith Deposits

Except as otherwise provided herein, Good Faith Deposits, shall be returned to each bidder not selected by the Debtors as the Successful Bidder (other than the Back-Up Bidder) by no later than the fifth (5th) Business Day following the conclusion of the Auction.  The Good Faith Deposit of the Back-Up Bidder shall be held until the fifth (5th) Business Day following the Closing of the Sale to the Successful Bidder or the Outside Date, as applicable.  The Good Faith Deposit of the Successful Bidder shall be held until the Closing of the Sale and applied in accordance with the Agreement or Purchase Agreement(s), as applicable.  If the Successful Bidder or Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder or Back-Up Bidder, as applicable, the Successful Bidder's Good Faith Deposit or Back-Up Bidder's Good Faith Deposit, as applicable, shall be forfeited to the Debtors.

## VII.   The Sale Hearing

The Successful Bid will be subject to approval by the Court.  The Sale Hearing will take place on **December [__], 2013 at [___] (prevailing Eastern Time)** before the Honorable Mary F. Walrath, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom 4, Wilmington, DE, 19801.  The Sale Hearing may be adjourned with the consent of the Successful Bidder from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

## EXHIBIT B
## AUCTION AND SALE HEARING NOTICE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EWGS INTERMEDIARY, LLC, *et al.*,[1] | ) | Case No. 13-12876 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### NOTICE OF SALE PROCEDURES, AUCTION DATE, AND SALE HEARING

**PLEASE BE ADVISED** that, on November [__], 2013, pursuant to a motion, dated November 5, 2013 (the "***Sale Procedures Motion***"), filed by EWGS Intermediary, LLC and Edwin Watts Golf Stores LLC, debtors and debtors-in-possession (collectively, the "***Debtors***"), the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered an Order (the "***Procedures Order***") approving certain Sale Procedures (the "***Sale Procedures***") in connection with the proposed sale by the Debtors of certain their assets (the "***Assets***") to one or more bidders, at an auction (the "***Auction***") to be conducted at the offices of Klehr Harrison Harvey Branzburg LLP, 919  Market Street, Suite 1000, Wilmington, DE 19801, or at another location timely disclosed by the Debtors to Qualified Bidders (as defined herein), on December [__], 2013 at 10:00 a.m. (the "***Auction Date***").  A copy of the Sale Procedures and Sale Motion can be obtained by requesting same from Debtors' counsel at the address set forth below or by emailing Domenic E. Pacitti, Esq. at dpacitti@klehr.com.

**PLEASE BE FURTHER ADVISED** that, pursuant to the Sale Procedures, any bidder desiring to submit a bid at the Auction (a "***Bid***") shall be subject to the requirements in the Sale Procedures, and shall among other things, send a letter indicating its interest in bidding addressed

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356).  The address of the Debtors' corporate headquarters is 20 Hill Avenue NW, Fort Walton Beach, FL 32548.

to the Debtors and their counsel, execute a confidentiality agreement and provide the requisite financial and other information (a "***Qualified Bidder***").

   **PLEASE BE FURTHER ADVISED** that all Bids for the Assets shall be submitted in accordance with the Sale Procedures and shall be submitted in writing to Bayshore Partners, LLC ("***Bayshore***"), 401 E. Las Olas Blvd., Suite 2360, Ft. Lauderdale, FL 33301, Attn: Steve Zuckerman or szuckerman@farlieturner.com, such that the Bid is actually received not later than December [__], 2013 at [_____] __.m..

   **PLEASE BE FURTHER ADVISED** that, pursuant to the Sale Procedures, objections to the Debtors' sale of the Assets (other than objections to Cure Amounts or adequate assurance of future performance as it relates to the Successful Bidder) shall be set forth in writing and shall state with particularity the grounds for such objections or other statements of position and shall be served by 4:00 p.m. on _____, ____, 2013, on (i) the Court; (ii) the Debtors, 20 Hill Ave. N.W., Ft. Walton Beach, FL 32548 Attn:  Lynda K. Barr; (iii) proposed counsel for the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801, Attn:  Domenic E. Pacitti, Esq.; (iv) counsel to the Debtors' prepetition secured lender and debtor in possession lender, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn; Regina Stango Kelbon, Esq; (v) proposed counsel to the official committee of unsecured creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Lawrence C. Gottlieb, Esq. and Jay R. Indyke, Esq. and proposed Delaware counsel to the official committee of unsecured creditors, Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Christopher Samis, Esq.; and (vi) the office of the United States Trustee for the District of Delaware, Caleb

Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: David Buchbinder, Esq.  (the "***Notice Parties***").

      **PLEASE BE FURTHER ADVISED** that the Court has scheduled December [__], 2013, at ____:00 ___.m. (or such time thereafter as counsel may be heard) as the date for a hearing (the "***Sale Hearing***") to consider entry of an order authorizing and approving (i) the sale or sales of the Assets free and clear of all liens, claims, and encumbrances, pursuant to the asset sale agreement or agreements as entered into by the Debtors pursuant to the Sale Procedures for the sale or sales of the Assets as a whole or in parts; (ii) the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale or sales of the Assets; and (iii) the exemption of the sale or sales from stamp or other similar taxes.  The Sale Hearing may, however, be adjourned from time to time by announcement at the Sale Hearing in open Court, without notice.

      **PLEASE BE FURTHER ADVISED** that objections, if any, that relate to the proposed assumption and assignment of executory contracts and unexpired leases (an "***Assigned Contract***") (including, but not limited to, any objections relating to the validity of the cure amount as determined by the Debtors or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses must be cured or satisfied under any of the assigned executory contracts or unexpired leases as of the Sale Hearing Date, not including accrued but not yet due obligations, in order for such contract to be assumed and/or assigned) (a "***Cure Objection***") shall be filed and served so as to be actually received by the Notice Parties, by _____, 4:00 p.m. (the "***Cure Objection Deadline***").

      **PLEASE BE FURTHER ADVISED** that objections, if any, that relate to the proposed assumption and assignment an Assigned Contract, solely as it relates to the adequate assurance

of future performance (an "***Adequate Assurance Objection***") shall be filed and served so as to be actually received by the Notice Parties, by _____ \_\_:\_\_ \_.m. (the "***Adequate Assurance Objection Deadline***").

**PLEASE BE FURTHER ADVISED** that, except as limited herein, unless a Cure Objection or Adequate Assurance Objection is filed and served by a party to an Assigned Contract or a party interested in an Assigned Contract by the Cure Objection Deadline or the Adequate Assurance Objection Deadline, as applicable, all interested parties who have received actual or constructive notice hereof shall be deemed to have waived and released any right to assert a Cure Objection and Adequate Assurance Objection and to have otherwise consented to the assumption and assignment of the Assigned Contract and shall be forever barred and estopped from asserting or claiming against the Debtors, the successful Qualified Bidder or any other assignee of the relevant Assigned Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such assigned contract for any period prior to the Sale Hearing Date.

**PLEASE BE FURTHER ADVISED** that Cure Objections shall set forth the cure amount the Objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, and conditions to assignment, and the support therefor.

**PLEASE BE FURTHER ADVISED** that hearings with respect to Cure Objections may be held (a) at the Sale Hearing, or (b) at such other date as the Court may designate, provided that if the subject Assigned Contract is assumed and assigned, the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited with and held in a segregated account by the Debtors or such other person as the Court may direct pending further order of the applicable Court or mutual agreement of the parties.  A properly filed and

served Cure Objection shall reserve such party's rights against the Debtors (but not against any purchaser of the Assets) respecting the Cure Obligation, but shall not constitute an objection to the relief generally requested in the Motion.

**PLEASE BE FURTHER ADVISED** that the Debtors reserve the right, and have been authorized by the Court, to reject at and as of the Sale Hearing any executory contract or unexpired lease not to be assumed and assigned.

**PLEASE BE FURTHER ADVISED** that all requests for information concerning the Assets or Sale Procedures should be in writing directed to Klehr Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, DE 19801, Attn:  Domenic E. Pacitti, Esq. or dpacitti@klehr.com

| | |
|---|---|
| Dated:  November [  ], 2013 | */s/* |
| Wilmington, Delaware | Domenic E. Pacitti (DE Bar No. 3989) |
| | Michael W. Yurkewicz (DE Bar No. 4165) |
| | **KLEHR HARRISON HARVEY** |
| | **BRANZBURG LLP** |
| | 919 N. Market Street, Suite 1000 |
| | Wilmington, Delaware 19801 |
| | Telephone:     (302) 426-1189 |
| | Facsimile:     (302) 426-9193 |
| | |
| | *Proposed Counsel to the Debtors* |
| | *and Debtors in Possession* |

**EXHIBIT C**
**CURE NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EWGS INTERMEDIARY, LLC, *et al.*,[1] | ) | Case No. 13-12876 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN CONTRACTS AND LEASES AND THE CURE**
**AMOUNTS FOR THOSE CONTRACTS AND LEASES**

PLEASE TAKE NOTICE THAT on [_____], 2013, EWGS Intermediary, LLC and

Edwin Watts Golf Shops, LLC, the debtors and debtors-in-possession herein (collectively, the

"***Debtors***") obtained an order approving this *Notice of Potential Assumption and Assignment of*

*Certain Contracts and Leases and the Cure Amounts for Those Contracts and Leases* (the "***Cure***

***Notice***") governing unexpired leases to be assumed and assigned (each an "***Assigned Contract***")

and the proposed amount necessary to cure any defaults which may exist with respect to each

Assigned Contract (the "***Cure Amounts***").

PLEASE TAKE FURTHER NOTICE THAT the Cure Notice is submitted with the

following limitations.  First, by including amounts due as November 4, 2013 for pre-petition

contracts and leases, the Debtors are not thereby admitting that any such contract or lease is

executory or unexpired and subject to assumption under section 365 of Title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (as amended, the "***Bankruptcy Code***").  Second, inclusion

of a contract or lease in this Cure Notice does not mean that the Debtors necessarily will assume

the contract or lease or that such contract or lease will be assigned to the Successful Bidder.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356).  The address of the Debtors' corporate headquarters is 20 Hill Avenue NW, Fort Walton Beach, FL 32548.

Third, the Debtors do not waive their rights to dispute any of the Cure Amounts listed in this Cure Notice.

PLEASE TAKE FURTHER NOTICE THAT this Cure Notice does not address post-petition amounts that may be due and owing under any contract or lease as of the date of any assumption and assignment.

**PLEASE TAKE FURTHER NOTICE THAT <u>your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in these chapter 11 cases. If you do not have an attorney, you may wish to consult one.**

PLEASE TAKE FURTHER NOTICE THAT objections to the proposed Cure Amount set forth herein, or to the assumption and assignment to the Successful Bidder of any of the contracts or leases listed herein, if any, must (a) be in writing, (b) set forth in reasonable detail the nature of and grounds for the objection, (c) if the objection relates to the Cure Amount, set forth in reasonable detail the amount that the counterparty believes is the appropriate Cure Amount, and should be accompanied by a reasonably detailed statement supporting the counter-party's allegation of the appropriate Cure Amount, (d) conform to the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), and (e) be served on: (i) counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE, 19801, Attn: Domenic E. Pacitti, Esq., (email: dpacitti@klehr.com); (ii) the U.S. Trustee, Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE, 19801, Attn:  David Buchbinder, Esq.; (iii) proposed counsel to the official committee of unsecured creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Lawrence C. Gottlieb,

2

Esq. and Jay R. Indyke, Esq. and proposed Delaware counsel to the official committee of unsecured creditors, Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Christopher Samis, Esq.; and (iv) counsel to the Debtors' prepetition secured lender and debtor in possession lender, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn; Regina Stango Kelbon, Esq.  Objections must be filed in the United States Bankruptcy Court for the District of Delaware and served so as to be received on or before [_____] at [_____] **Eastern Time** (the "*Objection Deadline*").

Unless an objection is filed and served before the Objection Deadline, all counter-parties shall (i) be forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts and the Debtors and the Successful Bidder shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notice; (ii) be deemed to have consented to the assumption and assignment, and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contract or that there is any objection or defense to the assumption and assignment of such Assigned Contract.

| | |
|---|---|
| Dated: November [ ], 2013<br>Wilmington, Delaware | */s/* _____<br>Domenic E. Pacitti (DE Bar No. 3989)<br>Michael W. Yurkewicz (DE Bar No. 4165)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone:   (302) 426-1189<br>Facsimile:   (302) 426-9193<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

3

4