**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 11 |
| EWGS INTERMEDIARY, LLC, *et al.*,[1] | ) |
| Debtors | ) |
| | ) Case No. 13-12876 (MFW) |
| | ) |
| | ) ~~Joint Administration Requested~~ |
| | ) Jointly Administered |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING ON ~~AN INTERIM~~ A FINAL BASIS AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED PARTIES ON ~~AN INTERIM~~ A FINAL BASIS, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363(C), (D) &(E), 364(C), 364(D)(1), 364(E) AND 507(B)~~, AND (V) SCHEDULING A FINAL HEARING AUTHORIZING FINANCING ON A FINAL BASIS  PURSUANT TO BANKRUPTCY RULE 4001~~**

Upon the motion (the "**Motion**"), dated November 4, 2013, of Edwin Watts Golf Shops, LLC, a Delaware limited liability company (the "**Borrower**"), and EWGS Intermediary, LLC, a Delaware limited liability company (the "**Guarantor**"), (Borrower and Guarantor individually and collectively, hereafter the "**Debtor**") each as a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356).  The address of the Debtors' corporate headquarters is 20 Hill Avenue NW, Fort Walton Beach, FL 32548.

(1)     authorization and approval for the Borrower to obtain post-petition loans, advances and other financial accommodations (the "**Post-Petition Financing**") ~~on an interim basis for a period through and including the date of the Final Hearing (as defined below)~~ from PNC Bank, National Association ("**PNC**"), in its capacity as agent (in such capacity, the "**DIP Agent**") for and on behalf of the lenders party (collectively, the "**DIP Lenders**") to the DIP Credit Agreement (as defined below), under or in connection with the debtor-in-possession revolving credit facility (the "**DIP Facility**") ~~in an interim aggregate amount up to $5,000,000 and~~ on a final basis in an aggregate amount up to $38,000,000 and otherwise in accordance with this ~~Interim~~ **Final** Order **(as defined below)**, secured by first priority perfected security interests in and liens, senior and above all other liens upon all of the DIP Collateral (as defined below) pursuant to Sections 364(c)(2) and 364(c)(3) 364(d) of the Bankruptcy Code and as set forth below;

(2)     authorization for the Borrower to enter into that certain Debtor-In-Possession Revolving Credit and Security Agreement with the DIP Agent and the DIP Lenders, substantially in the form attached hereto as **Exhibit 2** (the "**DIP Credit Agreement**"), authorization for Guarantor to enter into that certain Debtor-In-Possession Guaranty and Suretyship Agreement (the "**DIP Guaranty Agreement**") in favor of DIP Agent, for the benefit of the DIP Lenders, and that certain Debtor-In-Possession Pledge and Security Agreement in favor of DIP Agent, for the benefit of the DIP Lenders (the "**DIP Guarantor Security Agreement**"), pursuant to which the Guarantor guarantees, on a secured basis, all Obligations[2] arising under the DIP Credit Agreement, each of which shall reflect in all material respects the terms and conditions set forth in this ~~Interim~~ **Final** Order (the DIP Credit Agreement, th~~is~~**e** Interim Order and the~~is~~ **e** Final Order ~~(as defined below)~~ together with all other agreements, documents and instruments to be executed or delivered in connection therewith, collectively, the "**DIP Financing Documents**"), and to borrow upon entry of this ~~Interim Order, up to an aggregate principal amount not to exceed $5,000,000 and pursuant to the~~ Final Order up to an aggregate principal amount not to exceed $38,000,000 to be used in part for working capital and ~~upon entry of the Final Order~~ to refinance the outstanding principal balance of the advances and other Pre-Petition Obligations (as defined below) under that certain Revolving Credit and Security Agreement dated as of July 15, 2011 (as amended, supplemented, or otherwise modified from time to time, (the "**Pre-Petition Credit Agreement**"), by and among Edwin Watts Golf Shops, LLC, a Delaware limited liability company (the "**Pre-Petition Borrower**"), EWGS Intermediary, LLC, a Delaware limited liability company (the "**Pre-Petition Guarantor**"), PNC and the other lenders party thereto (collectively, the "**Pre-Petition Lender**") and PNC, in its capacity as agent for the Pre-Petition Lenders (in such capacity, the "**Pre-Petition Agent**").  The Pre-Petition Credit Agreement and all other agreements, documents and instruments executed or delivered with, to, or in favor of the Pre-Petition Agent and/or the Pre-Petition Lender, including, without limitation, all security agreements, notes, guarantees, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection with the Pre-Petition Credit Agreement or related thereto, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated or replaced at any time prior to the Petition Date, are collectively referred to herein as the "**Pre-Petition Financing Documents**".

---

[2] Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the DIP Credit Agreement.

074658.01380/~~12363214v.4~~2609727

(3)    the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to Sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this ~~Interim~~ **Final** Order;

(4)    authorizing the Debtors' use of "cash collateral" (the "**Cash Collateral**") which term shall include, without limitation, all cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all collateral pledged to the Secured Parties (as defined below) and the Subordinated Lender (as defined below) as contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein~~.~~**;**

(5)    granting adequate protection to each Pre-Petition Lender and Issuer (as defined in the Pre-Petition Credit Agreement) (the "**Pre-Petition Issuer**," together with the Pre-Petition Agent and Pre-Petition Lenders, the "**Pre-Petition Secured Parties**," together with the DIP Agent and DIP Lenders, the "**Secured Parties**") under and in connection with the Pre-Petition Financing Documents in accordance with the terms set forth herein;

(6)    granting adequate protection to EW Golf Holding Corp., a Delaware corporation (the "**Subordinated Lender**") as the payee under that certain Eighth Amended and Restated Senior Subordinated Promissory Note dated as of December 30, 2011 in the original principal amount of $36,525,902.59 ("**Secured Subordinated Note**")~~,~~**; and**

(7)    modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h)~~; and~~**.**

~~(8)    the setting of a final hearing on the Motion (the "Final Hearing") for entry of an order authorizing the financing and use of cash collateral on a final basis (the "Final Order").~~

Notice of the Motion, the relief requested therein, and the ~~Interim~~ **Final** Hearing (as defined below) (the "**Notice**") having been served by the Debtors in accordance with Rule 4001(c) on: (i) the DIP Agent and the DIP Lenders and the Pre-Petition Secured Parties; (ii) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) the holders of the twenty (20) largest unsecured claims against the Debtors' estates; (iv) the holder of the Secured Subordinated Note, (v) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (vi) all landlords and warehouseman of the Debtors; (vii) all guarantors of the Pre-Petition Obligations (defined

below); (viii) the Internal Revenue Service and all taxing authorities of states in which the Borrower and Other Loan Parties are doing business; (ix) all creditors known to the Debtors to be holding a judgment and (x) certain other parties identified in the certificates of service filed with the Court (collectively, the "**Noticed Parties**").

The initial hearing on the Motion having been held by this Court on November 5, 2013 (the "**Interim Hearing**") **and the Interim Order approving the Motion having been entered on November 5, 2013**.

**The final hearing on the Motion having been held by this Court on November 20, 2013 (the "Final Hearing").**

Upon the record made by the Debtors at the Interim **Hearing and the Final** Hearing, including the Motion, and the filings and pleadings in the Cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

A.    Petition.  On  November 4, 2013 (the "**Petition Date**"), each Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    Committee.  On November 12, 2013, the Official Committee of Unsecured Creditors (the "Committee") was appointed in these cases by the Office of the United States Trustee for the District of Delaware.**

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.  Any statements of the Court from the bench at the ~~Interim~~ **Final** Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this ~~Interim~~ **Final** ~~o~~**O**rder to the extent no~~t~~**nt** inconsistent herewith.

**C.** **B.**Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.** **C.**Notice.  Under the circumstances, the Notice given by the Debtors of the Motion, the **Interim** **Final** Hearing and the relief sought herein has been given to Noticed Parties pursuant to Bankruptcy Rule 4001(c)(2).

**E.** **D.**Debtors' Acknowledgments and Agreements.  Without prejudice to the rights of any other party (but subject to the limitations contained in Sections 5.1 and 5.2 below), the Debtors admit, stipulate, acknowledge and agree that:

(i)     Pre-Petition Financing Documents.  Prior to the commencement of the Cases, the Pre-Petition Secured Parties made loans, advances and provided other financial accommodations pursuant to the Pre-Petition Financing Documents to the Pre-Petition Borrower.  The Pre-Petition Guarantor guaranteed the Pre-Petition Obligations of the Pre-Petition Borrower pursuant to that certain Guaranty and Suretyship Agreement executed on July 15, 2011 in favor of the Pre-Petition Agent for the benefit of the Pre-Petition Secured Parties.

(ii)     Pre-Petition Obligations Amount.  As of November 4, 2013, the aggregate amount of all Obligations (as defined in the Pre-Petition Credit Agreement) owing by the Pre-Petition Borrower to the Pre-Petition Secured Parties under and in connection with the Pre-Petition Financing Documents was not less than $32,775,047.10, consisting of Revolving Advances outstanding under (and as defined in) the Pre-Petition Credit Agreement, Letters of Credit outstanding under (and as defined in), Lender-Provided Interest Rate Hedges (as defined in the Pre-Petition Credit Agreement) plus interest and fees accrued and accruing and unpaid interest, fees, costs, expenses (including attorneys' fees and legal expenses) and other charges

accrued, accruing or chargeable with respect thereto under the Pre-Petition Credit Agreement, (collectively, the "**Pre-Petition Obligations**").  The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Pre-Petition Borrower and Pre-Petition Guarantor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and nonavoidability of any of the Pre-Petition Obligations.

(iii)    Pre-Petition Collateral.  As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Financing Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by (a) Borrower to the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, upon the Collateral (as defined in the Pre-Petition Credit Agreement, hereafter the "**Pre-Petition Watts Collateral**"), subject to those liens permitted under the Pre-Petition Credit Agreement and any other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Pre-Petition Secured Parties, but only to the extent that such liens and security interests are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the lien of Pre-Petition Lenders in such equipment as of the Petition Date (collectively, the "Permitted Liens" and each a "**Permitted Lien**"); and (b) Pre-Petition Guarantor to Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, upon the Pre-Petition Guarantor assets (hereafter the "**Pre-Petition Guarantor Collateral**," together with the Pre-Petition Watts Collateral, the "**Pre-Petition Collateral**").  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which

6

would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Secured Parties' liens, claims or security interests in the Pre-Petition Collateral.

(iv)    <u>Secured Subordinated Note and Subordination Agreement</u>.  Prior to the commencement of the Cases, Borrower executed and delivered the Secured Subordinated Note to the Subordinated Lender.  The obligations owing by Borrower to the Subordinated Lender with respect to the Secured Subordinated Note (the "**Secured Subordinated Note Obligations**") are secured by a second priority lien on all Pre-Petition Collateral, subject to that certain Subordination Agreement, dated as of July 15, 2011, by and among the Subordinated Lender, Pre-Petition Agent, the Pre-Petition Borrower and the Pre-Petition Guarantor (as has been amended, restated, supplemented or otherwise modified from time to time, the "**Subordination Agreement**") and subject to Permitted Liens.  The Secured Subordinated Note Obligations are guaranteed by Guarantor.  As of the Petition Date, the Secured Subordinated Note Obligations are approximately $~~———————~~ **40.3 million of outstanding principal amount**.

(v)    <u>Subordination Agreement</u>.    The Subordination Agreement governs the respective rights, obligations and priorities of the Secured Parties and the Subordinated Lender with respect to the matters referred to therein, including, without limitation, the use of Cash Collateral and the DIP Facility.  The liens and security interests granted to the Subordinated Lender in the Pre-Petition Collateral are governed by and subject to the Subordination Agreement and are junior in all respects to the liens and security interests granted to the Pre-Petition Secured Parties, in the Pre-Petition Collateral and Secured Parties in the DIP Collateral.

**F.**        ~~E.~~Adequate Protection.

(i)        Adequate Protection Obligations. The Debtors acknowledge and agree that:

a.    the Pre-Petition Secured Parties are entitled to adequate protection resulting  from the (1) provisions of this ~~Interim~~ **Final** Order granting first priority and/or priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility, (2) use of the Cash Collateral, (3) use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral, and/or (4) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code; and

b.    for the Pre-Petition Collateral in which the Subordinated Lender held valid, perfected, enforceable and unavoidable liens on the Petition Date, the Subordinated Lender is being provided with adequate protection to the extent it is otherwise entitled, resulting from the (1) provisions of this ~~Interim~~**Final** Order granting first priority and/or priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility, (2) use of the Cash Collateral, (3) use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral, and/or (4) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code.

The amount of any such use and diminution being referred to hereafter as the "**Adequate Protection Obligations**".

(ii)     First Lien/Second Lien Adequate Protection. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection for the Adequate Protection Obligations, the Debtors have agreed to provide the Pre-Petition Secured Parties with the First Lien Adequate Protection, and the Subordinated Lender with the Second Lien Adequate Protection (each as defined below), it being understood that the Second Lien Adequate Protection is being provided solely to the extent it is determined that the Subordinated Lender is entitled thereto and that all liens granted hereunder continue to be subject to the terms and conditions of the Subordination Agreement.

(iii)     Necessity for Adequate Protection. The adequate protection and other treatment proposed to be provided by the Debtors pursuant to this ~~Interim~~ **Final** Order are consented to hereby, will minimize disputes and litigation over use of the Cash Collateral, and facilitate the Debtors' ability to continue their business operations because of the need for a DIP Facility.

**G.**     ~~F.~~Adequate Protection for Financing/Cash Collateral/Non-Impairment. The security interests and liens granted hereunder to (a) the DIP Agent, for the benefit of the DIP Lenders, under section 364(c) and (d) of the Bankruptcy Code, and (b) to the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, and (C) to the Subordinated Lender under sections 105, 361 and 363 of the Bankruptcy Code, are appropriate because, among other things: (a) the Pre-Petition Secured Parties have consented to the entry of this ~~Interim~~ **Final** Order subject to the protections provided herein; (b) the Subordinated Lender has consented to the entry of this ~~Interim~~ **Final** Order subject to the protections provided herein, and (c) the holders of Permitted Liens, to the extent they are legal, valid, binding, continuing, enforceable and fully perfected, are not being impaired by this ~~Interim~~ **Final** Order.

**H.**    ~~G.Preliminary~~ Findings Regarding the Postpetition Financing.

(i)    Postpetition Financing.    Borrower and the Guarantors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described, and on the terms and conditions set forth, in this ~~Interim~~ **Final** Order and the DIP Financing Documents.  Notwithstanding the Secured Parties' willingness to extend such financial accommodations, the Pre-Petition Obligations shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the Pre-Petition Financing Documents.  Likewise, the Secured Note Obligations shall be deemed to have been automatically accelerated on the Petition Date as a result~~s~~ of the commencement of the cases in accordance with the terms of the Secured Subordinated Note.

(ii)    Fair and Reasonable. Based on the record presented to the Court by the Debtors, it appears that the terms of the DIP Credit Agreement, the DIP Financing Documents and the DIP Facility are fair and reasonable and reflect Borrower's and Guarantors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(iii)    Need for Post-Petition Financing.   The Debtors do not have sufficient available sources of working capital to operate the Borrower's businesses in the ordinary course without the Post-Petition Financing and the ability to use Cash Collateral as described in this ~~Interim~~ **Final** Order.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed Post-Petition Financing and the

use of Cash Collateral on the terms set forth in the DIP Financing Documents and this ~~Interim~~ **Final** Order is vital to the preservation and maximization of the going concern value of the Debtors' currently operating businesses pending a sale of the assets of the Debtors. Accordingly, the Debtors have an immediate need to obtain authorization to use Cash Collateral for the limited purpose set forth herein and obtain the Post-Petition Financing in order to, among other things, permit the orderly continuation of the operation of their operating businesses, preserve jobs for their employees, maintain vendor support and minimize the disruption of their business operations, manage and preserve the assets of the Debtors' bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "**Estates**") in order to maximize the recoveries to creditors of the Estates.

(iv)    No Credit Available on More Favorable Terms.  **The** Debtors are unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on all or substantially all of Borrower's and Guarantors' assets, pursuant to Section 364(c) and Section 364(d) of the Bankruptcy Code.  **The** Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Financing Documents and this ~~Interim~~ **Final** Order.

(v)    Budget.  Based on the record presented to the Court by the Debtors, the Debtors have prepared and delivered to the DIP Agent and the DIP Lenders the Budget (as defined in the DIP Credit Agreement).  A copy of the Budget is annexed hereto as **Exhibit 1**.  The Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements for the periods

11

covered thereby.  The ~~Debtors believe in good faith that the Budget is achievable and will allow the Debtors to operate in Chapter 11 without the accrual of unpaid administrative expenses during the term of the Budget.  The~~ Pre-Petition Agent, the Pre-Petition Lenders, the DIP Agent, DIP Lenders and the Subordinated Lender are relying upon the Debtors' compliance with the Budget in determining to consent to the use of Cash Collateral for the limited purposes expressly set forth herein and/or to enter into the Post-Petition Financing provided for herein.

(vi)    Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363 (m).  Based on the record presented to the Court by the Debtors, it appears that the terms of the DIP Financing Documents and this ~~Interim~~ **Final** Order are fair, just, reasonable and appropriate under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Based on the record before this Court, it appears (and the Debtors have stipulated) that the Debtors and each of the Secured Parties have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents, the DIP Facility and the Debtors' use of Cash Collateral, respectively, all subject to the terms of this ~~Interim~~ **Final** Order.  Any credit extended under the terms of this ~~Interim~~ **Final** Order shall be deemed to have been extended in "good faith" by the Secured Parties as that term is used in Section 364(e) and 363(m) of the Bankruptcy Code.

(vii)   Pre-Petition Secured Parties and Subordinated Lender Consent. **The** Pre-Petition Secured Parties~~'~~ have consented to the DIP Facility and the use of Cash Collateral solely on the terms and conditions set forth in this ~~Interim~~ **Final** Order. The Subordinated Lender has consented to the DIP Facility and the use of Cash Collateral solely on the terms and conditions set forth in this ~~Interim~~ **Final** Order.  Nothing in this ~~Interim~~ **Final**

12

Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Secured Parties and the Subordinated Lender are or will be adequately protected with respect to any additional financing, or any non-consensual use of Cash Collateral. The DIP Agent and the DIP Lenders have indicated a willingness to provide the DIP Facility, but solely on the terms and conditions set forth in this ~~Interim~~ **Final** Order and in the DIP Financing Documents.

(viii)    <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors and their Estates, as its implementation will, among other things, provide the Borrower with the necessary liquidity to (a) minimize disruption to the Borrower **'s** on-going businesses and on-going operations and to permit the Debtors to sell their assets, (b) preserve and maximize the value of the Debtors' Estates, and (c) avoid immediate and irreparable harm to the Borrower, ~~their~~ **its** business~~es~~, ~~their~~ employees and ~~their~~ assets.

(ix)    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this ~~Interim~~ **Final** Order ~~pursuant to~~ **and for waiver of the 14-day stay of** Bankruptcy Rules ~~4001(c)(2~~**4001(a)(3) and 6004(h**).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this ~~Interim~~ **Final** Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

13

Section 1.       Authorization and Conditions to Financing.

      1.1     Motion Granted.  The Motion is granted ~~in accordance with Bankruptcy Rule 4001(c)(2)~~ to the extent provided in this Order.  This Order shall be referred to herein as the "~~Interim~~ **Final** Order."

      1.2     Authorization to Borrow and Use of Loan Proceeds.  The Borrower is hereby authorized and empowered to immediately borrow and obtain Advances (and, at the discretion of the DIP Agent and the DIP Lenders, Letters of Credit) and the Borrower and Guarantors are hereby authorized and empowered to incur indebtedness and obligations owing to the DIP Agent and the DIP Lenders on the terms and subject to the conditions set forth in the DIP Financing Documents and this ~~Interim Order, during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 7 of this Interim Order (the "Interim Financing Period") up to the amount of $5,000,000 during such period and~~ **Final Order** up to the maximum amount of $38,000,000.00 ~~upon entry of the Final Order~~; in such amounts as may be made available to the Borrower by **the** DIP Lenders in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Financing Documents.  The Borrower may only use the proceeds of the Advances and any other credit accommodations provided to the Borrower pursuant to the terms and conditions of the **Budget,** DIP Financing Documents and this ~~Interim~~ **Final** Order; ~~provided however, that~~ upon entry of th**is** ~~e~~ Final Order, Advances may be used to refinance~~,~~ the Pre-Petition Obligations owing under the Pre-Petition Financing Documents, subject to the rights reserved in paragraph 5.1 herein.

      1.3     Financing Documents.

        1.3.1   Authorization.  The Borrower and ~~Guarantors are~~ **Guarantor is each** hereby authorized to enter into, execute, deliver, perform, and comply with all of the

14

terms, conditions and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement, the DIP Guaranty Agreement and the DIP Guarantor Security Agreement.

1.3.2  <u>Approval</u>.  The DIP Financing Documents and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this ~~Interim~~ **Final** Order.

1.3.3  <u>Amendment of DIP Financing Documents</u>.  The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any non-material modification of the DIP Financing Documents without further order of this Court or any other modification to the DIP Financing Documents; provided~~,~~ **.** however, that notice of any material modification or amendment to the DIP Financing Documents shall be provided to counsel to ~~any~~ **the** Committee, counsel to the Subordinated Lender and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the Committee agrees to a shorter period but no less than three (3) business days.  If ~~any~~ **the** Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

1.4  <u>Payment of Prepetition Debt</u>.  The Debtors are authorized to pay the Pre-Petition Obligations to the Pre-Petition Secured Parties in accordance with Sections 1.5 and 1.6 of this ~~Interim~~ **Final Order, subject to the rights granted to the Committee and other parties in interest provided for in paragraph 5.1 of this Final** Order.

1.5  <u>Payments and Application of Payments</u>.  The Debtors are authorized and directed to make all payments and transfers of Debtors' Estate property to the DIP Agent and the

15

DIP Lenders as provided, permitted and/or required under the DIP Financing Documents, which payments and transfers, subject to paragraph 5.1 herein, shall not be avoidable or recoverable from the DIP Lenders under Section 506(c) **(upon entry of the Final Order)**, 547, 548, 550, 553 or any other section of the Bankruptcy Code**, except Section 506(c) as otherwise set forth herein,** or subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  The DIP Agent and the DIP Lenders shall apply the proceeds of the DIP Collateral (as defined below), and any other amounts or payments received by the DIP Agent in respect of the Pre-Petition Obligations and the Post-Petition Obligations (as defined in the DIP Financing Documents) (collectively, the "**Obligations**") in accordance with the DIP Financing Documents and this **Interim Final** Order, in such order and manner determined by the DIP Agent, including, without limitation, first applying all payments, proceeds and other amounts to the Pre-Petition Obligations.  Without limiting the generality of the foregoing, the Debtors are authorized and directed, without further order of this Court, to pay or reimburse the DIP Agent and the DIP Lenders, in accordance with the DIP Financing Documents, for all present and future costs and expenses whether accrued prepetition or postpetition, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the DIP Agent and the DIP Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this **Interim Final** Order, all of which shall be and are included as part of the principal amount of the Obligations and secured by the DIP Collateral (as defined below); provided that **the** DIP Agent shall send a redacted **summary** invoice **in sufficient detail to enable a reasonable review** (subject in all respects to applicable privilege or work product doctrines) to **the** Debtors, the United States Trustee and**, if appointed,** the Committee counsel and shall be paid if no objection

16

has been raised within ten (10) days, and to the extent there is an objection, the Court may resolve the objection or the objecting parties may resolve any objection with the DIP Agent.

        1.6      <u>Interest and Fees</u>.  The rate of interest to be charged for the Advances constituting Post-Petition Obligations pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.  The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement, including without limitation the $200,000 commitment fee, which ~~is~~ <u>was</u> earned upon execution of the DIP Credit Agreement and payable on the last day of the Term.  The rate of interest to be charged on the Pre-Petition Obligations shall be based on the Alternate Base Rate and shall accrue and be payable at the times and in the manner set forth in the Pre-Petition Financing Documents.   None of the Pre-Petition Obligations shall be able to accrue interest in reference to the Eurodollar Rate (as defined in the Pre-Petition Credit Agreement) during the post petition period.  Any and all fees charged under the Pre-Petition Financing Documents shall be as set forth in the Pre-Petition Financings Documents and shall be payable at the times set forth in the Pre-Petition Financing Documents.  **<u>Notwithstanding any Adequate Protection Obligations, the Pre-Petition Secured Parties are entitled to the foregoing interest, fees, costs and expenses as set forth in the Pre-Petition Financing Documents pursuant to section 506(b) of the Bankruptcy Code.</u>**

        1.7      <u>Continuation of Prepetition Procedures</u>.  All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to the DIP Agent and the DIP Lenders and the funding pursuant to the Pre-Petition Credit Agreement, including any lockbox and/or blocked depository bank account arrangements, will be the same under the DIP Financing Documents and are hereby approved and shall continue without interruption after the commencement of the Cases, provided that the

17

practices and procedures are otherwise consistent with the terms of the Order approving the Debtors' Motion for Entry of Interim and Final Orders to (A) Continue to Operate their Cash Management System and (B) Maintain Existing Business Forms.

      1.8    <u>Hedge/Swap Agreements</u>.  All pre-petition swap or interest rate hedge agreements in effect on the Petition Date shall be deemed terminated without any further action by the Pre-Petition Agent or Pre-Petition Lenders.  All fees, costs, or charges associated with the termination of the foregoing agreements shall be part of the Pre-Petition Obligations.

**1.9    Notwithstanding anything contained in this Final Order or the DIP Financing Documents, prior to the closing of any sale transaction, the DIP Agent, DIP Lenders, Subordinated Lender and Debtors (upon consultation with the Committee) shall endeavor to agree upon a revision of the DIP Facility and/or authorization to use cash collateral hereunder and a further revised Budget to pay any incremental increase in the accrued administrative expenses for the period from the entry of this Final Order until closing of any sale transaction.**

Section 2.    <u>Cross-Collateralization, Adequate Protection and Superpriority Administrative Claim Status</u>.

      2.1    <u>Cross-Collateralization.</u>

      2.1.1  <u>DIP Lien Grant</u>.  To secure the prompt payment and performance of any and all ~~Post-Petition~~ Obligations (~~and upon entry of the Final Order, any and all Obligations,~~ including without limitation, all Pre-Petition Obligations and Post-Petition Obligations) of the Borrower and Guarantors to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority (subject to the Permitted Liens

and the Carve-Out), security interests and liens in and upon (such security interests and liens collectively, the "**DIP Liens**") all present and after acquired property of the Debtors of any nature whatsoever, including without limitation, all accounts receivable, equipment, general intangibles, inventory, investment property, subsidiary stock, goods contract rights, chattel paper, warehouse receipts, deposit accounts, letters of credit, cash, cash equivalents, chattel paper, commercial tort claims, documents, personal property, real property, leaseholds, insurance proceeds, fixtures, machinery, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property, inter-company notes or receivables due to each Debtor, all of the Collateral (as defined in the DIP Credit Agreement), all of the Collateral (as defined in the DIP Guarantor Security Agreement), and all causes of action whether pursuant to federal or state law**, and upon entry of the Final Order all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, whether pursuant to federal law or applicable state law (collectively, "Avoidance Actions") of the Debtors or their estates, of the Debtors or their Estates,** and as to all of the foregoing, all rents issues, products, proceeds and profits generated by any of the foregoing (being sometimes collectively referred to in this **Interim Final** Order as the "**DIP Collateral"); provided, however, that DIP Collateral shall not include any and all claims and causes of action and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise under Chapter 5 of the Bankruptcy Code (collectively, "Avoidance Actions**").   The Obligations shall also include all indemnification obligations of Borrower and Guarantors to the Pre-Petition Secured Parties arising under the Pre-Petition Financing Documents, including without limitation the obligations arising under Sections 2.2(f), 2.17, 3.7, 3.8, 3.9, 3.10, 4.13, 4.19(f), 15.5 and

15.18(b) of the Pre-Petition Credit Agreement which survive payment in full of the Pre-Petition Obligations and all post-petition indemnity obligations under the DIP Financing Documents. Further, as consideration to Pre-Petition Secured Parties for their agreement to the terms hereof and as replacement collateral for the Pre-Petition Collateral used, consumed or sold by the Borrower and/or Guarantors in the Cases, to the extent of any diminution in value of the Pre-Petition Collateral, the DIP Collateral shall also secure the Pre-Petition Obligations.  Subject to the provisions of Section 2.3.1, the DIP Liens shall be:

> (A) <u>Liens on Unencumbered Assets</u>. Pursuant to Section 364(c)(2) of the Bankruptcy Code, continuing valid, perfected, enforceable, first priority, fully perfected liens on and security interests in all of the Debtors' right, title, and interest in and to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest on or lien on the Petition Date (the "**<u>Unencumbered Property</u>**").

> (B) <u>Liens on Encumbered Assets</u>. Pursuant to Section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, second priority and fully perfected lien on and security interest (other than as set forth in clause (C) below) in all of the Debtors' right, title, and interest, in and to and under all DIP Collateral which is subject to, as of the Petition Date, a Permitted Lien that was perfected prior to the Petition Date or that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

> (C) <u>Priming Liens on Encumbered Assets.</u>  Subject to Permitted Liens, pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable,

fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtors' right, title and interest in, to and under all DIP Collateral, including, without limitation, priming security interests and priming liens which are senior to (i) the security interests and liens held by the Pre-Petition Agent, on behalf of the Pre-Petition Secured Parties; (ii) the security interests and liens held by the Subordinated Lender and (iii) the Adequate Protection Liens (as defined below).

(D) <u>Liens Senior to Certain Other Liens.</u>  Notwithstanding anything to the contrary contained in this ~~Interim~~ **Final** Order, the DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided or preserved for the benefit of the Debtors or their Estates under section 551 of the Bankruptcy Code or (ii) any intercompany or affiliate liens of the Debtors.

(E) Notwithstanding anything to the contrary in this ~~Interim~~ **Final** Order or any financing agreements or documents, (a) with respect to the Debtors' non-residential real property leases, no Liens or encumbrances shall be granted on or extend to the Debtors' non-residential real property leases themselves, but rather, any Liens granted shall extend only to the proceeds of such non-residential real property leases, and (b) upon an Event of Default, the rights of the DIP Agent and/or DIP Lenders to enter onto the Debtors' leased premises to access and/or liquidate any Collateral shall be limited to (i) any such rights agreed to in writing by the applicable landlord prior to entry

21

onto the leased premises, (ii) any rights that the DIP Agent and/or DIP Lenders have under applicable non-bankruptcy law or (iii) such rights as may be granted by this Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

2.1.2    Post-Petition Lien Perfection. This ~~Interim~~ **Final** Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of any Borrower or Guarantor (a "**Perfection Act**").  Notwithstanding the foregoing, if the DIP Agent, the Pre-Petition Agent and/or the Subordinated Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, each of the DIP Agent, the Pre-Petition Agent and/or the Subordinated Lender is authorized to perform such act, and the Borrower and Guarantors are authorized to perform such act to the extent necessary or required by the DIP Agent, the Pre-Petition Agent and/or the Subordinated Lender, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  The DIP Agent, the Pre-Petition Agent and/or Subordinated Lender may choose to file, record or present a certified copy of this ~~Interim~~ **Final** Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is

authorized to accept, file or record such certified copy of this ~~Interim~~ **Final** Order in accordance with applicable law. Should the DIP Agent, the Pre-Petition Agent and/or the Subordinated Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this ~~Interim~~ **Final** Order.

        2.1.3 <u>Subordination Agreement</u>. Notwithstanding anything to the contrary contained herein, the liens and security interests granted to the Secured Parties to secure the Obligations shall have priority over any and all liens and security interests granted to the Subordinated Lender to secure obligations of any of the Debtors owing to the Subordinated Lender and the rights of the parties with respect to such liens and security interests shall be governed by the Subordination Agreement. So long as any Obligations are outstanding under the Pre-Petition Financing Documents, the DIP Financing Documents or DIP Lenders' commitment to make Advances under the DIP Credit Agreement has not been terminated, the Subordinated Lender shall (i) take no action to foreclose upon or otherwise exercise remedies against any DIP Collateral or the Pre-Petition Collateral, (ii) be deemed to have consented to any release of DIP Collateral in connection with any disposition of any DIP Collateral and/or Pre-Petition Collateral authorized under the Pre-Petition Financing Documents or the DIP Financing Documents and, effective upon such release, be deemed to release its liens therein, and (iii) not file any financing statement, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral, except, in each case, to the extent permitted by the Subordinated Agreement.

2.2   <u>Superpriority Administrative Expense</u>.  For all ~~Post-Petition~~ Obligations (~~and upon entry of the Final Order, for all Obligations,~~ including without limitation, all Pre-Petition Obligations and the Post-Petition Obligations) now existing or hereafter arising and for diminution in value of any Pre-Petition Collateral used by the Borrower and/or ~~Guarantors~~ **the Guarantor** pursuant to this ~~Interim~~ **Final** Order, the DIP Financing Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim in the Borrower's and Guarantor**'s**[2] Estates pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, and over any and all administrative expenses, adequate protection claims or priority claims of the kind specified in, or ordered pursuant to the Bankruptcy Code, including without limitation, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 506(c) ~~(upon entry of the Final Order)~~, 507, 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**DIP Superpriority Claim**"), subject only to the Carve Out.  **The DIP Superpriority Claim shall not extend to the proceeds of Avoidance Actions.**

2.3   <u>Carve Out.</u>

2.3.1   <u>Carve Out</u>.  The DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Claims shall be subject only to the right of payment of the following expenses (collectively, the **"Carve-Out"**):

a.   statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) with respect to the Borrower (the "**Statutory Fees**"); and

b.   the reasonable fees and expenses actually incurred on or after the Petition Date, with respect to services performed solely with respect to **the** Debtors and that are allowed and payable by final order of the Court under Sections 328, 330, or 331 of the

24

Bankruptcy Code and/or any interim compensation procedures order, as applicable (collectively, the "**Allowed Professional Fees**"), by attorneys, accountants and other professionals retained by the Debtors and ~~any Committee(s) appointed for the Debtors in the Cases~~**the Committee**, under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "**Professionals**")**, and reasonable out-of-pocket expenses of the members of the Committee**, in a cumulative, aggregate sum of (i) for the period prior to the occurrence of an Event of Default, not to exceed the lesser of (A) the weekly amounts budgeted to be funded for each such Professional for such week in accordance with the Budget for the time period preceding the occurrence of an Event of Default (to the extent any Event of Default occurs mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees incurred on or after the Petition Date up through and including the occurrence of an Event of Default and (ii) for the time period following an Event of Default, an amount equal to, for counsel to the Debtors, FTI Consulting, Farlie, Turner & Co., LLC and Debtor's claims/noticing agent the remaining weekly amounts budgeted to be funded for counsel for the Debtors  in the amount of $100,000 and for counsel for the Committee **and its members** in the amount of $~~15,000~~ **50,000** (collectively, (i) and (ii) is the "**Carve-Out Cap**").

   c. Subject to the terms of this ~~Interim~~ **Final** Order, the Carve-Out Cap shall be allocated on a Professional by Professional basis based on the amounts budgeted to be funded for each Professional pursuant to the Budget.  The Carve-Out Cap is in addition to any unpaid Statutory Fees.

   2.4 <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this ~~Interim~~ **Final** Order, neither the Carve-Out, nor the proceeds of any Advances, Letters of Credit or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion

or joiner in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations (whether Pre-Petition Obligations or Post-Petition Obligations) or Secured Subordinated Note Obligations or the Secured Parties' or Subordinated Lender's liens on and security interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations (whether Pre-Petition Obligations or Post-Petition Obligations) or Secured Subordinated Note Obligations or the Secured Parties' or Subordinated Lender's liens on and security interests in the pre-petition Collateral or the DIP Collateral, or (iii) preventing, hindering or delaying the Secured Parties' or Subordinated Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any in accordance with the terms and conditions of this ~~Interim~~ **Final** Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of the Secured Parties or Subordinated Lender, except to the extent expressly permitted herein, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders, without the prior written consent of the DIP Agent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the Secured Parties, Subordinated Lender, or any of them, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Secured Parties, Subordinated Lender, or any of them, under Chapter 5 of the Bankruptcy Code; provided, however, that, subject to the Carve Out Cap, an amount not to exceed $25,000 in the aggregate of the indebtedness incurred pursuant to the DIP Facility may be used to pay Allowed

Professional Fees of the Committee to investigate (but not prosecute) claims against and objections with respect to the Pre-Petition Obligations and pre-petition liens and security interests of the Pre-Petition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Pre-Petition Secured Parties). **For the avoidance of doubt, (1) no Pre-Petition Collateral or DIP Collateral (nor any proceeds thereof) in excess of the amounts set forth in the Budget or as otherwise provided for by the Carve-Out may be used to pay allowed Professional Fees of the Committee to investigate claims with respect to the Secured Subordinated Note Obligations and pre-petition liens and security interests of the Subordinated Lender (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Subordinated Lender); and (2) no Pre-Petition Collateral or DIP Collateral (nor any proceeds thereof) of any amount may be used to pay allowed Professional Fees of the Committee to prosecute claims against or otherwise object to the Secured Subordinated Note Obligations and pre-petition liens and security interests of the Subordinated Lender.**

       2.5    <u>Carve Out Reserve</u>.  At the DIP Agent's sole discretion, the DIP Agent may at any time establish (and adjust) a reserve against the amount of Advances and other credit accommodations that would otherwise be made available to the Borrower pursuant to the lending formulae contained in the DIP Credit Agreement in respect of the Carve-Out.  Nothing contained herein shall limit, modify or restrict in any way the DIP Agent's rights to establish (and adjust) any other reserves in accordance with the DIP Financing Documents.

       2.6    <u>Payment of Carve Out.</u>

       2.6.1  The Debtors shall maintain an escrow account with Klehr Harrison for the payment of Allowed Professional Fees (the "**Carve-Out Reserve Account**") which account shall be funded by or on behalf of the Debtors in accordance with the Budget on a

weekly basis until the **Obligations are paid in full or the** occurrence of an Event of Default**,** provided there is availability under the DIP Credit Agreement. In the event there is no availability under the DIP Credit Agreement, the Carve-Out shall be funded from the net proceeds at closing of the sale of substantially all of the **Debtor's** assets. After an Event of Default, the Carve-Out Reserve Account may continue to be funded at the DIP Agent's option, up to the Carve-Out Cap.  From funds in the Carve-Out Reserve Account, Klehr Harrison shall pay the Professionals the Allowed Professional Fees in connection with the Carve-Out compensation and reimbursement of expenses that accrue following the Petition Date in compliance with and subject to the Carve-Out provisions of Section 2.3 as the same may be due and payable; provided  however, that to the extent that Allowed Professional Fees that have accrued from the Petition Date through and including an Event of Default are less than the amounts funded into the Carve Out Reserve Account, the excess amounts in the Carve Out Reserve Account shall be remitted to the DIP Agent to apply to reduce the Pre-Petition Obligations and/or the Post-Petition Obligations at Agent's sole discretion.  For the avoidance of doubt, (a) in making payments from the Carve-Out Reserve Account, Klehr Harrison shall be entitled to rely upon written certifications of each Professional as to the amount such Professional is due and owing from the Carve-Out Reserve Account; and (b) in no circumstances shall Klehr Harrison be obligated to pay any Professional other than from funds held, from time to time, in the Carve-Out Reserve Account.  Funds held in the Carve Out Reserve Account shall be applied to the Allowed Professional Fees that have been incurred following the Petition Date in the manner set forth in this ~~Interim~~ **Final** Order in accordance with the procedures established in the Cases with the excess, if any, to be remitted to the DIP Agent as set forth in the preceding sentence.  Once the ~~c~~**C**arve-~~o~~**O**ut **has** been funded as set

forth above, all obligations of the DIP Agent and DIP Lenders and Pre-Petition Agent and Pre-Petition Lenders with respect to the Carve-Out shall be terminated.

2.6.2  The Carve-Out Cap shall be reduced on a dollar-for-dollar basis on a weekly basis by the amounts actually funded into the Carve-Out Reserve Account. ~~To the extent the Carve-Out Reserve Account has not been funded in accordance with the Budget prior to the occurrence of an Event of Default, the DIP Agent, on behalf of the DIP Lenders, shall remit the difference from collateral proceeds~~.  Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Obligations (Pre-Petition Obligations and/or Post-Petition Obligations) or the Secured Subordinated Note, and shall not and shall not be deemed to subordinate any of the DIP Agent's, Pre-Petition Agent's, the DIP Lenders', Pre-Petition Lenders' or the Subordinated Lender's liens and security interests in the DIP Collateral or Pre-Petition Collateral, their DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  The DIP Agent, the DIP Lenders, Pre-Petition Agent, and Petition Lenders shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in <u>Sections</u> <u>2.3</u>, <u>2.4</u>, <u>2.5</u> or <u>2.6</u> of this ~~Interim~~ <u>Final</u> Order shall be construed to obligate the DIP Agent, any DIP Lender, Pre-Petition Agent, Pre-Petition Lender<u>s</u>, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

Section 3.        <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this ~~Interim~~ <u>Final</u> Order, pursuant to sections 363(c)(2) of the Bankruptcy Code, the Debtors are authorized to use Cash Collateral in accordance with the DIP Financing Documents.  **Absent**

29

~~entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Cash Collateral at the expiration of the Interim Period.~~ Nothing in this ~~Interim~~ **Final** Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as provided for herein **or in the DIP Financing Documents**.

      3.1    <u>Pre-Petition Agent's Adequate Protection</u>.  As adequate protection for the interests of the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, on account of the Adequate Protection Obligations, the Pre-Petition Agent is being provided with adequate protection (collectively, the "**First Lien Adequate Protection**").

      3.1.1    <u>First Lien Adequate Protection Liens</u>.  The Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, is hereby granted valid and perfected replacement and additional security interests in, and liens (the "**<u>First Lien Adequate Protection Liens</u>**") on the DIP Collateral to the extent of the Adequate Protection Obligations, which shall be junior in all respect to the DIP Liens, the Permitted Liens and the Carve Out.

      a.    The First Lien Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the Petition Date and, subject to Section 5.1, not subject to subordination or avoidance, for all purposes in the Cases and subject only to the DIP Liens, the Permitted Liens and the Carve Out.

      b.    Except for the DIP Liens, the Permitted Liens and the Carve Out, the First Lien Adequate Protection Liens shall not be made subject to or pari passu with any lien or security interest by any court order heretofore or hereafter entered in the Cases (unless with the consent of the Pre-Petition Agent and the Pre-Petition Lenders).  The First Lien Adequate Protection Liens shall not be subject to sections 506(c) ~~(upon entry of the Final Order)~~, 510,

549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made pari passu with or senior to the First Lien Adequate Protection Liens.

           3.2    <u>First Lien Adequate Protection Claims</u>.  As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, is hereby granted an allowed administrative claim (the "**First Lien Adequate Protection Claim**") against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code to the extent that the First Lien Adequate Protection Liens do not adequately protect the diminution in the value of the liens and security interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, which First Lien Adequate Protection Claim shall be subject and subordinate only to the DIP Superpriority Claim and the Carve Out and shall have priority over all other administrative expense claims and unsecured claims against the Debtors or their Estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) ~~(upon entry of the Final Order)~~, 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code<u>; provided, however, the First Lien Adequate Protection Claim shall not include claims on Avoidance Actions or the proceeds thereof</u>.

           3.2.1  <u>Interest.</u>  As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, shall be entitled to interest on account of the outstanding Pre-Petition Obligation**s**, which shall be accrued and payable and paid in accordance with the Pre-Petition Financing Documents.

           3.2.2  <u>Additional Adequate Protection</u>.  As further adequate protection, and without limiting any rights of the Pre-Petition Agent, for the benefit of the Pre-Petition

Secured Parties, under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for the Adequate Protection Obligations, the Debtors shall pay or reimburse the Pre-Petition Agent for any and all of its accrued and payable reasonable fees, costs, expenses and charges payable under the Pre-Petition Financing Documents, including, without limitation, the fees and expenses of the Pre-Petition Agent as provided in Section 15.9 of the Pre-Petition Credit Agreement, whether accrued pre-petition or post-petition, all without further notice, motion or application to, order of, or hearing before, this Court; provided that DIP Agent shall be permitted to add such amounts to the Obligations following submission of a redacted summary invoice to the Debtors, the United States Trustee and, if appointed, the Committee or its counsel, of a written invoice **in sufficient detail to enable a reasonable review** (subject in all respects to applicable privilege or work product doctrines) **and** provided no objection has been raised within ten (10) days, and to the extent there is an objection, the Court may resolve the objection. Such written invoices shall include (i) Blank Rome LLP, counsel to the Pre-Petition Agent and (ii) any other professional, advisor or agent reasonably retained by the Pre-Petition Agent or its counsel in connection with the Pre-Petition Financing Documents pursuant to the Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

        3.3     <u>Subordinated Lender's Adequate Protection</u>. In consideration for and on account of the Adequate Protection Obligations, and solely to the extent that the Subordinated Lender is entitled to same, the Subordinated Lender is being provided with adequate protection (the "**Second Lien Adequate Protection**" and, together with the First Lien Adequate Protection, the "**Adequate Protection**").

32

3.3.1  <u>Second Lien Adequate Protection Liens</u>.  The Subordinated Lender is hereby granted valid and perfected replacement and additional security interests in, and liens (the "**Second Lien Adequate Protection Liens**," and together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**"), on the ~~DIP Collateral~~ **items and type of collateral in which it held valid, perfected and unavoidable liens as of the Petition Date** to the extent of the Adequate ~~Projection~~ **Protection** Obligations, which shall be junior in all respects to (i) the DIP Liens, (ii) the First Lien Adequate Protection Liens, (iii) the Permitted Liens and (iv) the Carve Out.  **Notwithstanding the forgoing, or anything herein to the contrary, the Second Lien Adequate Protection Liens shall not attach to, nor have any recourse against, any and all claims and causes of action of the Debtors or their estates and the proceeds thereof whether by judgment, settlement, or otherwise (i) from Avoidance Actions and (ii) against Sun Capital Partners, Inc., Sun Capital Partners IV, LP, Sun Capital Partners V, LP, Sun Edwin Watts, LLC, H.I.G. Sun Partners, Inc., EW Golf Holding Corp., Edwin Watts Holding Corp. and their successors or assigns and any of their respective officers, directors, employees, agents, and attorneys (the "Sun Actions").**

a.    The Second Lien Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the Petition Date and, subject to Sections 5.1 and 5.2, not subject to subordination or avoidance, for all purposes in the Cases and subject only to the DIP Liens, the First Lien Adequate Protection Liens, the Permitted Liens and the Carve Out.

b.    Except for the DIP Liens, the First Lien Adequate Protection Liens, the Permitted Liens and the Carve Out, the Second Lien Adequate Protection Liens shall not be made subject to or pari passu with any lien or security interest by any court order

heretofore or hereafter entered in the Cases (unless with the consent of the Subordinated Lender). The Second Lien Adequate Protection Liens shall not be subject to sections 506(c) (upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made pari passu with or senior to the Second Lien Adequate Protection Liens.

   3.3.2 <u>Second Lien Adequate Protection Claims</u>. As further adequate protection, the Subordinated Lender is hereby granted an allowed administrative claim (the "**Second Lien Adequate Protection Claim**", and together with the First Lien Adequate Protection Claim, the "**Adequate Protection Claims**") against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code to the extent that the Second Lien Adequate Protection Liens do not adequately protect the diminution in the value of the liens and security interests of the Subordinated Lender in the Pre-Petition Collateral, which Second Lien Adequate Protection Claim shall be subject and subordinate only to the DIP Superpriority Claim, the First Lien Adequate Protection Claim and the Carve Out and shall have priority over all other administrative expense claims and unsecured claims against the Debtors or their Estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code. **Notwithstanding the forgoing, or anything herein to the contrary, the Second Lien Adequate Protection Claim shall not be payable from the proceeds and property received, whether by judgment, settlement, or otherwise (i) from Avoidance Actions and (ii) from the Sun Actions.**

**3.3.3** **Notwithstanding anything to the contrary herein or in the Secured Subordinated Note, in the event that any, all, or substantially all of the Debtors' assets are sold pursuant to section 363 of the Bankruptcy Code, no proceeds received therefrom shall be paid to the Subordinated Lender except as reasonably agreed by the Debtors, the Committee and the Subordinated Lender or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, upon (i) the indefeasible payment in full in cash of all Obligations owed to the DIP Agent and the DIP Lenders by the Debtors or (ii) termination of the rights and obligations arising under, or Event of Default under, this Final Order and the DIP Financing Documents, the Debtors' right to use Cash Collateral shall be automatically terminated.**

Section 4.        Default; Rights and Remedies; Relief from Stay.

4.1        Events of Default.  The occurrence of any Event of Default as defined and under the DIP Credit Agreement shall constitute an "**Event of Default**" under this ~~Interim~~ **Final** Order.

4.2        Rights and Remedies Upon Event of Default/Relief from Stay.

4.2.1  Upon the occurrence of and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further Order of the Bankruptcy Court (i) the DIP Agent and DIP Lenders shall no longer have any obligation to make any advances under the DIP Facility; (ii) all amounts outstanding under the DIP Financing Documents and Pre-Petition Financing Documents shall be automatically accelerated; (iii) the DIP Agent and the Pre-Petition Agent shall be entitled to immediately terminate the Debtors' right to use Cash Collateral by written notice thereof to counsel for the Debtors, counsel ~~for any official committee of unsecured creditors ("Committee")~~**to the Committee**, and the U.S. Trustee, without further application or order of this Court, (iv) the

35

Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this ~~Interim~~ **Final** Order, the DIP Credit Agreement and the other DIP Financing Documents and the Pre-Petition Financing Documents, (iv) the DIP Agent and the Pre-Petition Agent shall be entitled to charge the default rate of interest under the DIP Facility and under the Pre-Petition Financing Documents and (v) subject to the notice requirement set forth below, both the DIP Agent and the Pre-Petition Agent shall be entitled to take any act or exercise any other right or remedy as provided in this ~~Interim~~ **Final** Order, the DIP Financing Documents, the Pre-Petition Financing Documents or applicable law, including, without limitation, setting off any Obligations or Pre-Petition Obligations with DIP Collateral or Pre-Petition Collateral or proceeds in any Secured Parties' possession, and enforcing any and all rights with respect to the DIP Collateral or Pre-Petition Collateral.

4.2.2   Without further notice, application or order of this Court, upon the occurrence and during the continuance of an Event of Default, and after providing five (5) business days' prior written notice thereof (which five (5) **business** day period only applies to the DIP Collateral or Pre-Petition Collateral enforcement remedies described below) to counsel for the Debtors, counsel for ~~any~~ **the** Committee, counsel for the Subordinated Lender and the U.S. Trustee, the DIP Agent for the benefit of itself and the DIP Lenders, and the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, shall be entitled to take any action and exercise all rights and remedies provided to them by this ~~Interim~~ **Final** Order, the DIP Financing Documents or the Pre-Petition Financing Documents or applicable law as the DIP Agent or the Pre-Petition Agent may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the DIP Collateral or Pre-Petition Collateral or any other assets or properties of the Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders and the Pre-Petition Agent, for the benefit of itself

36

and the other Pre-Petition Secured Parties, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment in cash of all the Obligations including the Pre-Petition Obligations.  Notwithstanding the foregoing, DIP Agent may continue to apply proceeds received into the lockbox or collection account to reduce the Obligations during such five (5) business day period.  During such five (5) business day-period, the Debtors and/or the Committee shall be entitled to seek an emergency hearing with the Court, **at which the only issue the Debtors and/or the Committee shall be allowed to assert is whether an Event of Default actually occurred**.

Additionally, upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent or the Pre-Petition Agent of their respective rights and remedies under this ~~Interim~~ **Final** Order, the DIP Financing Documents or Pre-Petition Financing Documents, provided that the Debtors and the DIP Agent agree upon an acceptable wind down budget with agreed upon carve-out amounts for Debtors' counsel, the Debtors shall assist the DIP Agent and the Pre-Petition Agent in effecting any sale or other disposition of the DIP Collateral or Pre-Petition Collateral required by the DIP Agent and Pre-Petition Agent, including any sale of DIP Collateral or Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code or assumption and assignment of DIP Collateral or Pre-Petition Collateral consisting of contracts and leases pursuant to section 365 of the Bankruptcy Code, in each case, upon such terms that are designed to maximize the proceeds obtainable from such sale or other disposition that are otherwise acceptable to the DIP Agent and the Pre-Petition Agent, and the Debtors shall fully cooperate with the Secured Parties in their exercise of rights and remedies.

4.2.3   Upon and after the occurrence of an Event of Default, and subject to the five **business** day notice provision provided above, in connection with a liquidation of any of the DIP Collateral, the DIP Agent (or any of its employees, agents, consultants,

contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (i) ~~upon the entry of the Final Order,~~ enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors~~; provided that prior to entry of the Final Order, the DIP Agent may be permitted to do so in accordance with their pre-petition landlord's waivers~~ and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses.  The DIP Agent and the DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property (other than the Debtors) for the period of time that the DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the Agent actually occupies or uses such assets or properties).

4.2.4   The rights and remedies of the Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Secured Parties may have under the DIP Financing Documents, Pre-Petition Financing Documents or otherwise.  The fourteen day stay provisions of Federal Rules of Bankruptcy Procedure 6004(h) and 4001(a)(3) are hereby waived.

4.3   <u>Expiration of Commitment/Relief from Stay.</u>  Upon the expiration of the Borrower's authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this ~~Interim~~ **Final** Order (except if such authority shall be extended with the prior written consent of the DIP Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender) or upon the Termination Date (as defined in the DIP Credit Agreement), unless an Event of Default

38

occurs sooner and the automatic stay has been lifted or modified as provided herein, all of the Obligations shall immediately become due and payable and the Secured Parties shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to the Secured Parties pursuant to the terms and conditions of the DIP Financing Documents or this ~~Interim~~ **Final** Order, and the DIP Agent, acting on behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this ~~Interim~~ **Final** Order, the DIP Financing Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the DIP Collateral or any other property of the Borrower's and Guarantors' Estates.

4.4    Landlord Waiver Agreements.    ~~Upon entry of the Final Order unless~~ **Unless** otherwise permitted in any third party access and waiver agreement or Lien Waiver Agreement (as defined in the Pre-Petition Credit Agreement), all rights and remedies granted in any third party access and waiver agreement and/or Lien Waiver Agreement executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition Credit Agreement, and all rights granted to the Secured Parties therein, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable and applicable to and binding upon the landlords and other parties to such waiver agreements with respect to the DIP Collateral and Obligations.

Section 5.    Representations; Covenants; and Waivers.

5.1    Objections to Secured Party Pre-Petition Obligations.  The extent, legality, validity, perfection, enforceability and other matters noted in this ~~Interim~~ **Final** Order with respect to the Pre-Petition Financing Documents and Secured Parties' liens in the Pre-Petition

Collateral and in the DIP Collateral as security for the Pre-Petition Obligations and the Adequate Protection Obligations, are for all purposes subject only to the rights of any party in interest with requisite standing (including any Chapter 7 trustee appointed during the Senior Challenge Period) (as defined below)) for a period of the earliest of (i) the day before the date set for the auction in the bid procedures upon entry of the Final Order; (ii) 60 days from the date of the formation of the Committee; and (iii) 75 days from the filing date if no Committee is appointed (as defined below)) through December 4, 2013 (such period hereafter referred to as the "**Initial Senior Challenge Period**"); provided that the Senior Challenge Period shall be extended for a Chapter 7 trustee for an additional sixty (60) days if the Case is converted prior to the expiration of the Initial Senior Challenge Period (the "**Extended Senior Challenge Period**", together with the **Initial Senior Challenge Period**, the "**Senior Challenge Period**"): to seek to (a) challenge in any manner the Pre-Petition Obligations, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with, the Pre-Petition Obligations or the Pre-Petition Financing Documents, or (b) assert or allege any other matters in any way arising out of, relating to, or in connection with, the Pre-Petition Obligations or the Pre-Petition Financing Documents, or (c) challenge the extent, legality, validity, perfection and/or enforceability of any Secured Party's pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code (the actions described in clause (a), (b) and/or (c) above, collectively referred to herein as a "**Senior Obligations Objection**").   If a Senior Obligations Objection is not timely filed within the Senior Challenge Period (I) the Pre-Petition Obligations shall be deemed allowed in full and the Secured Parties' security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as legal, valid, binding, in full force and effect, non avoidable, perfected and senior to all other liens (subject only to Permitted Liens to the extent such liens are valid, perfected and unavoidable) upon and

claims against the Pre-Petition Collateral with respect to all parties in these Cases and not be subject to any counterclaims, setoff, recoupment, deduction, or claim of any kind or any defenses, or any further objection or challenge by any party at any time, and (II) the Pre-Petition Secured Parties and each of their respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Pre-Petition Financing Documents entered into with Borrower and/or Guarantor~~s~~ prior to the entry of this ~~**Interim**~~ **Final** Order and shall not be subject to any further objection or challenge by any party at any time. Nothing in this ~~**Interim**~~ **Final** Order shall be deemed to confer standing to commence any action or proceeding on either the Committee, or any other party-in-interest.  **If, during the Senior Challenge Period, the Committee files a motion for standing with a draft complaint attached thereto, the Senior Challenge Period shall be tolled, solely for the Committee and solely with respect to the claims asserted in the draft complaint, until such time as this Court determines whether the Committee has standing to file a Senior Obligations Objection.  If this Court determines that the Committee has standing to file a Senior Obligations Objection, the Senior Challenge Period shall be extended for three (3) business days from the date of entry of the order granting the Committee standing to file a Senior Obligations Objection; provided however that such an extension shall only apply to those claims that this Court has specifically found that the Committee has standing to assert.**  After expiration of the Senior Challenge Period, the release set forth in Section 5.5 with no Senior Obligations Objection having been interposed on behalf of the Debtors' Estates, shall be binding on the Debtors' Estates, including any subsequently appointed trustee, case fiduciary or successors and assigns.  To the extent that the Committee with appropriate standing timely files ~~**an**~~ **a** Senior Obligations Objection on behalf of any of the Estates against any Secured Party the

41

releases set forth in Section 5.5 shall not be binding with respect to specific matters asserted in such Senior Obligations Objection.  Notwithstanding anything to the contrary contained in this ~~Interim~~ **Final** Order, this Court expressly reserves the right to unwind the roll-up of the Pre-Petition Obligations into Post-Petition Obligations ~~that is contemplated to be approved upon entry of the Final Order~~ or to order other appropriate relief against the Pre-Petition Agent and the Pre-Petition Lenders (including reallocation of payments or disgorgement) in the event there is a timely (in accordance with Section 5.1 hereof) and successful challenge by any party in interest to the validity, enforceability, extent, perfection or priority of the Pre-Petition Agent's liens in the Pre-Petition Collateral, or to the amount, validity, enforceability of the Pre-Petition Obligations.

      5.2    <u>Objections to Secured Subordinated Note Obligations.</u>  The extent, legality, validity, perfection, enforceability and other matters noted in this ~~Interim~~ **Final** Order with respect to the Secured Subordinated Note and the Subordinated Lender's liens in the Pre-Petition Collateral as security for the Secured Subordinated Note Obligations and the Adequate Protection Obligations, are for all purposes subject only to the rights of any party in interest with requisite standing (including any Chapter 7 trustee appointed during the Secured Subordinated Note Challenge Period (as defined below)) ~~for a period of the earliest of  (i) the day before the date set for the auction   in the bid procedures upon entry of the Final Order~~**through February 2**, ~~(ii) 60 days from the date of the formation of the Committee, and (ii) 75 days from the filing date if no Committee is appointed~~ **2014** (such period hereafter referred to as the "**Initial Subordinated Note Obligations Challenge Period**"); provided that the Initial Subordinated Note Obligations Challenge Period shall be extended for a Chapter 7 trustee for an additional sixty (60) days if the Case is converted prior to the expiration of the Initial Subordinated Note Obligations Challenge Period (the "**Extended Subordinated Note**

**Obligations Challenge Period**", together with the Initial Subordinated Note Obligations Challenge Period, the "**Subordinated Note Obligations Challenge Period**"):**, provided, further, that the Initial Subordinated Note Obligations Challenge Period may be extended upon consent of the parties or an order of the Court,** to seek to (a) challenge in any manner the Secured Subordinated Note Obligations, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with, the Secured Subordinated Note Obligations or the Secured Subordinated Note, or (b) assert or allege any other matters in any way arising out of, relating to, or in connection with, the Secured Subordinated Note Obligations or the Secured Subordinated Note, or (c) challenge the extent, legality, validity, perfection and/or enforceability of the Subordinated Lender's pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code (the actions described in clause (a), (b) and/or (c) above, collectively referred to herein as a "**Subordinated Note Objection**"). If a Subordinated Note Objection is not timely filed within the Subordinated Note Obligations Challenge Period**, as such period may be extended,** (I) the Secured Subordinated Note Obligations shall be deemed allowed in full and the Subordinated Lender's security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as legal, valid, binding, in full force and effect, non avoidable, perfected and senior to all other liens (subject only to the Permitted Liens to the extent such liens are valid, perfected and unavoidable) upon and claims against the Pre-Petition Collateral with respect to all parties in these Cases and not be subject to any counterclaims, setoff, recoupment, deduction, or claim of any kind or any defenses, or any further objection or challenge by any party at any time, and (II) the Subordinated Lender and each of its respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Secured Subordinated

43

Note and related documents entered into with Borrower and/or Guarantor~~s~~ prior to the entry of this ~~Interim~~ **Final** Order and shall not be subject to any further objection or challenge by any party at any time. ~~Nothing in this Interim~~ **This Final** Order shall be deemed to **automatically** confer standing **on the Committee** to commence any action or proceeding ~~on either the Committee, or any other party-in-interest~~**related to the Subordinated Lender during the Subordinated Note Obligations Challenge Period**.

        5.3    <u>Debtors' Waivers.</u>  At all times during the Cases, and whether or not an Event of Default has occurred, unless otherwise consented to by the DIP Agent in writing in advance (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), the Debtors irrevocably waive any right that they may have to seek authority: (i) to use Cash Collateral of the Secured Parties under Section 363 of the Bankruptcy Code except to the extent expressly permitted in this ~~Interim~~ **Final** Order; (ii) ~~until all Obligations are indefeasibly paid and satisfied in full in cash,~~ to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders~~; (iii) upon entry of the Final Order~~, **unless such post-petition loans or other financial accommodations provide that the Obligations will be indefeasibly paid and satisfied in full; (iii)** to challenge the application of any payments authorized by this ~~Interim~~ **Final** Order as pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations; (iv) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full in cash and satisfaction of all Obligations on the effective date of such plan; or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Agent and the DIP Lenders as provided in this ~~Interim~~ **Final** Order or the

44

DIP Financing Documents or the DIP Agent's and the DIP Lenders' exercise of such rights or remedies.

      5.4    Section 506(c) Claims. ~~Effective upon the entry of a Final Order approving the Motion, no~~ No costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against:

      a.    the DIP Agent or any DIP Lender or the Pre-Petition Agent, or Pre-Petition Lender, their respective claims or the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender); or

      b.    the Subordinated Lender pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of the Subordinated Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the Subordinated Lender);

~~Upon entry of a Final Order, the~~ The Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral.

      5.5    Release.

      5.5.1  In consideration of and as a condition to the DIP Agent and the DIP Lenders making Advances and providing other credit and financial accommodations to the Borrower pursuant to the provisions of this ~~Interim~~ Final Order and the DIP Financing Documents, each Debtor, on behalf of itself, and other legal representatives (collectively, the

"**Releasors**"), subject to Section 5.1, hereby absolutely releases, forever discharges and acquits each Pre-Petition Secured Party and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Pre-Petition Agent, each Pre-Petition Lender and all such other parties being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action **(including, without limitation, any claims under Chapter 5 of the Bankruptcy Code)**, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses rights of set-off, demands and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, the "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the date of this ~~Interim~~ **Final** Order, in respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Financing Documents and any Advances, Letters of Credit or other financial accommodations made by the Pre-Petition Secured Parties to the Debtors pursuant to the Pre-Petition Financing Documents; provided that such release**s** shall ~~not~~ be effective ~~with respect~~ **as** to the Debtors ~~until~~ **upon** entry of th**is**~~e~~ Final Order, and **shall not be effective** with respect to the Debtors' Estates, until the expiration of the Senior Challenge Period.  In addition, upon the indefeasible payment in full in cash of all Obligations owed to the DIP Agent and the DIP Lenders by the Debtors and termination of the rights and obligations arising under this ~~Interim~~ **Final** Order and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent),

the DIP Agent and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Financing Documents or this ~~Interim~~ **Final** Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated)), on terms and conditions acceptable to the DIP Agent.

         5.5.2   Upon the entry of this ~~Interim~~ **Final** Order, each Releasor hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released and discharged by each Releasor pursuant to Section 5.5.1 above.  If any Releasor violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

Section 6.        Other Rights and Obligations.

        6.1      No Modification or Stay of this ~~Interim~~ **Final** Order.  Based upon the record presented to the Court by the Debtors, notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this ~~Interim~~ **Final** Order, the DIP Financing Documents or any term hereunder or thereunder~~,~~ **or** (ii) ~~the failure to obtain a Final Order pursuant to Bankruptcy Rule 400l(c)(2), or (iii)~~ the dismissal or conversion of one or more of the Cases, the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to Section 364(e) of the Bankruptcy Code and the ~~Interim~~ **Final** Order and DIP Financing Documents.

6.2     <u>Power to Waive Rights; Duties to Third Parties</u>.  The Secured Parties shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this ~~Interim~~ **Final** Order in respect of the Secured Parties (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s), subject to the Subordination Agreement.  Any waiver by any Secured Party of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any Secured Party, subject to the Subordination Agreement.

6.3     <u>Disposition of Collateral</u>   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the consent of the DIP Agent, except for sales of the Borrower's Inventory in the ordinary course of their business or as otherwise permitted in the DIP Credit Agreement.

6.4     <u>Inventory</u>.  The Debtors shall not, without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise**.**

6.5     <u>Reservation of Rights</u>.  The terms, conditions and provisions of this ~~Interim~~ **Final** Order are in addition to and without prejudice to the rights of the Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing

48

Documents, the Pre-Petition Financing Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

      6.6   <u>Modification of the Automatic Stay</u>.  The automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this ~~Interim~~ **Final** Order and the DIP Financing Documents, including without limitation the application of collections, authorization to make payments, granting of liens and perfection of liens.

      6.7   <u>Binding Effect.</u>

      6.7.1  The provisions of this ~~Interim~~ **Final** Order, the DIP Financing Documents, the Obligations, the DIP Superpriority Claim, First Lien Adequate Protection Liens, First Lien Adequate Protection Claims and any and all rights, remedies, privileges and benefits in favor of the  DIP Agent and the DIP Lenders, Pre-Petition Secured Parties provided or acknowledged in this ~~Interim~~ **Final** Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this ~~Interim~~ **Final** Order pursuant to Bankruptcy Rules 6004(~~g~~**h**) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

49

6.7.2  Any order dismissing one or more of the Cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Agent's and the DIP Lenders' and the Pre-Petition Secured Parties liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full in cash, and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim and DIP Liens and First Lien Adequate Protection Liens and First Lien Adequate Protection Claims of the DIP Agent and the DIP Lenders in the DIP Collateral.

6.7.3  In the event this Court modifies any of the provisions of this ~~Interim~~ **Final** Order or the DIP Financing Documents ~~following a Final Hearing:~~ (a) ~~the Final Order shall provide~~ such modifications shall not affect the rights or priorities of any portion of the Obligations which arises or is incurred or is advanced prior to such modifications; and (b) this ~~Interim~~ **Final** Order shall remain in full force and effect ~~except as specifically amended or modified at such Final Hearing.~~.

6.7.4  ~~This Interim~~ **This Final** Order shall be binding upon the Debtors, their Estates, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtors and shall inure to the benefit of the Secured Parties, the Debtors and their respective successors and assigns, subject to the rights of any Chapter 11 or Chapter 7 trustee pursuant to Section 5.1 above (collectively, the "**Successor Cases**").

6.8  Marshalling.  In no event shall the Secured Parties or the Subordinated Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the DIP Collateral of the Pre-Petition Collateral, as applicable.

6.9     Proofs of Claim **for Pre-Petition Secured Parties**. Notwithstanding the entry of an order establishing a bar date in any of these Cases the Pre-Petition Secured Parties shall not be required to file proofs of claim in any of the Cases with respect to any of the Pre-Petition Obligations or any other claims or liens granted hereunder or created hereby. The Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claim in each of the Cases on behalf of all of the Pre-Petition Secured Parties in respect of the Pre-Petition Obligations.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties.  Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

6.10    Proofs of Claim for Secured Subordinated Note. Notwithstanding the entry of an order establishing a bar date in any of these Cases, the Subordinated Lender shall not be required to file proofs of claim in any of the Cases with respect to any of the Secured Subordinated Note Obligations or any other claims or liens granted hereunder or created hereby. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

6.11    Waiver of Bankruptcy Rule 4001(a)(3), 6003(b), 6004(a) and 6004(h). The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a) and the 14-day stay of 4001(a)(3) and 6004(h) are hereby waived.

6.12    Order Controls.  Unless this ~~Interim~~ **Final** Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Financing Documents and/or the Pre-Petition Financing Documents ~~or~~ **and** (b) the terms and provisions of

51

this ~~Interim~~ **Final** Order, then in each case the terms and provisions of this ~~Interim~~ **Final** Order shall govern.

6.13    Objections Overruled.  All objections to the entry of this ~~Interim~~ **Final** Order are, to the extent not withdrawn, hereby overruled.

6.14    No Third Party Rights.  Except as explicitly provided for herein, this ~~Interim~~ **Final** Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

**Section 7.**       **Service of** ~~Section 7.~~Final ~~Hearing and Response Dates.~~**Order.**

~~The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____ noon before this Court.  The Debtors shall promptly mail copies of this I~~**The Debtors shall promptly mail copies of this Fin**~~terim Order to the Noticed Parties, and to any other party that has filed a request for notices with this court and to any Committee after same has been appointed, or Committee counsel, if same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Klehr Harrison Harvey & Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, Delaware 19801-3062; Attn:  Domenic Pacitti, Esq., Fax: (302) 426-9193; (b) counsel for the Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801; Attn: Regina Stango Kelbon, Esq., Fax: (302) 425-6424; (c) counsel to any Committee; (d) counsel to the Subordinated Lender; and (e) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than _____ 4:00 p.m. prevailing Eastern time.~~**l Order to the Noticed Parties and to any other party that has filed a request for notices with this court.**

074658.01380/~~12363214v.4~~2609727

Dated: _____
      Wilmington, Delaware

                                           _____

                                           HONORABLE MARY F. WALRATH
                                           UNITED STATES BANKRUPTCY JUDGE

074658.01380/12363214v.42609727

**EXHIBIT 1**

**BUDGET**

**EXHIBIT 2**

**DIP CREDIT AGREEMENT**

074658.01380/12363214v.42609727

| Comparison Details | |
|---|---|
| Title | **pdfDocs compareDocs Comparison Results** |
| Date & Time | 11/20/2013 8:35:52 AM |
| Comparison Time | 2.51 seconds |
| compareDocs version | v3.4.9.32 |

| Sources | |
|---|---|
| Original Document | [#22260972] [v7] Interim DIP- Edwin Watts.docDMS Information |
| Modified Document | [#12363214] [v4] Final DIP- Edwin Watts.docDMS information |

| Comparison Statistics | |
|---|---|
| Insertions | 74 |
| Deletions | 60 |
| Changes | 147 |
| Moves | 14 |
| TOTAL CHANGES | 295 |
| | |
| | |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Standard |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Formatting | Color only. |
| Changed lines | Mark left border. |
| Comments color | ByAuthorcolor options] |
| Balloons | False |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Formatting |
| Character Level | Word | True |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | True |
| Show Track Changes Toolbar | Word | True |
| Show Reviewing Pane | Word | True |
| Update Automatic Links at Open | Word | True |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Print |
| Remove Personal Information | Word | False |

074658.01380/12363214v.42609727