## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EWGS INTERMEDIARY, LLC, *et al.*,[1] | ) | Case No. 13-12876 (MFW) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |
|  | ) | Related Docket No. 23 |
|  | ) |  |

## ORDER PURSUANT TO SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE (1) APPROVING AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (2) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (3) GRANTING RELATED RELIEF

Upon consideration of the Debtors' Motion for Order (A) Authorizing and Approving Combined Agency Agreement and Asset Purchase Agreement; (B) Approving, Subject to Higher or Better Offers, Store Closing Sales and Sale of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims and Encumbrances; (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (D) Granting Liens to Agent and Abandonment of Property; (E) Authorizing the Debtors to Consummate Transactions Related to the above; and (F) Granting Other Relief (the "Motion")[2]; and it appearing that the relief requested is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are: EWGS Intermediary, LLC (5356) and Edwin Watts Golf Shops, LLC (5356).

[2]   All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion, the Agency Agreement or in the GWNE APA. In the event of a conflict between any of the terms and provisions of this Order, on the one hand, and any of the terms and provisions of the GWNE APA, the Agency Agreement, and/or the GOB Sale Guidelines, on the other hand, the terms and provisions of this Order shall control. In the event of a conflict between any of the terms and provisions of this GWNE APA and the Agency Agreement, the terms and provisions of the Agency Agreement shall control.

that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and the Debtors and Hilco Merchant Resources, LLC (the "Agent") having agreed upon terms and conditions for the Agent to act as the Debtors' exclusive agent to conduct orderly liquidation sales or other disposition of all of Company's Assets (the "Sale") in accordance with the terms and conditions of that certain Agency Agreement, by and between the Agent, the Debtors and GWNE, Inc. ("GWNE"), a final form of which is attached hereto as Exhibit A (the "Agency Agreement"); and the Debtors, the Agent and GWNE having agreed upon terms and conditions for the Agent to designate GWNE as the acquirer of certain Assets (such Assets, the "GWNE Assets") set forth in the Asset Purchase Agreement, a final form of which is attached hereto as Exhibit B (the "GWNE APA"), and for the Debtors to sell, transfer, or assume and assign, as applicable, the GWNE Assets to GWNE in accordance with the terms and conditions of the GWNE APA (collectively, the "GWNE Sale"); and the transactions represented by the Agency Agreement and the GWNE APA having been determined to be the highest and best offer for the Assets; and a hearing having been held on November 20, 2013, whereupon the Court entered its Order (A) Authorizing and Scheduling an Auction and Hearing to Approve the Sale of Substantially all of the Assets of the Debtors, (B) Approving the Sale Procedures for Such Assets, (C) Approving the Form and Scope of Notice of the Sale Procedures and Auction, (D) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (E) Granting Related Relief [Docket No. 88] (the "Bidding Procedures Order"); and a sale hearing having been held on December 5, 2013 (the "Sale Hearing") to consider the relief requested in the

Motion and approval of the Agency Agreement and the GWNE APA; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon the Declaration of Lynda K. Barr (the "Barr Declaration"); and upon all of the proceedings had before the Court (including but not limited to the testimony and other evidence proffered or adduced at the Sale Hearing); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.    **Jurisdiction:**  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134.  Approval of the Debtors' entry into the Agency Agreement and the GWNE APA, and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.    **Venue:**  Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

C.    **Statutory Predicates:**  The statutory predicates for the approval of the Agency Agreement, the GWNE APA and transactions contemplated therein are sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.    **Notice:**  Proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), 363 and 365 of the

---

[3]    The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 6006, and in compliance with the Bidding Procedures Order. No other or further notice is required.

E. **Opportunity to be Heard:** A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Creditors' Committee, (iii) counsel to the secured lenders, (iv) counsel to PNC as lender under the Debtors' debtor-in-possession loan facility, (v) parties entitled to receive notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002, (vi) all entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in or on the Assets, (vii) all counterparties to the Assumed Contracts, (viii) the Internal Revenue Service and all state and local taxing authorities in jurisdictions where there Debtors have or may have any tax liability (collectively, the "Taxing Authorities"), (ix) all relevant regulatory authorities, (x) all persons who have expressed an interest in acquiring the Assets, and (xi) all known creditors of the Debtors ((i) through (xi) collectively, the "Notice Parties"). The notice provided constitutes good and sufficient notice of the Motion and the Sale Hearing, and no other or further notice of the Motion or the Sale Hearing or the entry of this Order need be given. Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

F. **Marketing Process:** As demonstrated by: (i) the Barr Declaration, (ii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iii) the representations of counsel made on the record at the Sale Hearing, the Debtors have thoroughly marketed the Assets and have conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or

4

who the Debtors believed may have an interest in acquiring or liquidating the Assets, to submit competing bids. The Debtors, the Agent and GWNE have respectively negotiated and undertaken their roles leading to the Sale, the GWNE Sale and entry into the Agency Agreement in a diligent, noncollusive, fair and good faith manner.

G.    **Highest and Best Offer:** Collectively, the Agency Agreement attached hereto as Exhibit A and the GWNE APA attached hereto as Exhibit B, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement and the GWNE APA, (i) is the highest and best offer received by the Debtors for the Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest. There is no legal or equitable reason to delay entry into the Agency Agreement, the GWNE APA and the transactions contemplated therein, including, without limitation, the Sale and the GWNE Sale.

H.    **Business Judgment:** The Debtors' decisions to (i) enter into the Agency Agreement, (ii) perform under and make payments required by the Agency Agreement, and (iii) take such actions as may be reasonably required to effectuate all Designation Rights (as defined in the Agency Agreement), are reasonable exercises of the Debtors' sound business judgment consistent with their fiduciary duties and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. The Debtors' decisions to (x) enter into the GWNE APA, (y) perform under the Agency Agreement, and (z) to assume and to assign the Assumed Contracts to GWNE as part of the GWNE Sale, are reasonable exercises of the Debtors' sound business judgment consistent with their fiduciary duties and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

I.     **Time of the Essence:**   Time is of the essence in effectuating the Agency Agreement and the GWNE APA and proceeding with the transactions contemplated therein without interruption.  Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the Sale under the Agency Agreement must be commenced and the GWNE Sale under the GWNE APA must be closed on the first day following entry of this Order following entry of this Order in to maximize the value that the Agent may realize from the Sale and GWNE may realize from the GWNE Sale, and the value that the Debtors may realize from entering into the Agency Agreement and the GWNE APA.  Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h) and 6006(d) and permit the immediate effectiveness of this Order.

J.     **Sale Free and Clear:**   The Debtors are the sole and lawful owners of the Assets and no other person has any ownership, right, title or interest therein.  The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  A sale of the Assets, including, but not limited to, the GWNE Assets, other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other

liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the protections of this Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and the GWNE APA, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for the sale of such Assets. But for the protections afforded to the Agent and GWNE under the Bankruptcy Code and this Order, the Agent would not have offered to pay the consideration contemplated in the Agency Agreement and GWNE would not have offered to pay the consideration contemplated in the GWNE APA. In addition, subject to the conditions set forth in paragraph 26 of this Order, (i) each entity with an Encumbrance upon the Assets, (a) has consented to the Sale or is deemed to have consented to the Sale, (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (c) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied; and (ii) each entity with an Encumbrance upon the GWNE Assets, (x) has consented to the GWNE Sale or is deemed to have consented to the GWNE Sale, (y) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (z) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section

363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, subject to the conditions set forth in paragraph 26 of this Order, approval of the Agency Agreement and the GWNE APA and the consummation of each of the Sale and the GWNE Sale free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

K.      **Arms-length Sale:** The consideration to be paid by the Agent under the Agency Agreement and the consideration to be paid by GWNE under the GWNE APA were each negotiated at arm's-length and constitute reasonably equivalent value and fair and adequate consideration for the Assets or the GWNE Assets, respectively, under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement and the terms and conditions set forth in the GWNE APA are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

L.      **Good Faith:** The Debtors, their members, management and board of directors, the Agent, its members and its officers, directors, employees, agents and representatives, and GWNE, its officers, directors, employees, agents and representatives actively participated in the bidding process and acted in good faith. The Agency Agreement between the Agent, the Debtors and GWNE and the GWNE APA between GWNE and the Debtors were each negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as

that term is used in sections 363(m) and 364(e) of the Bankruptcy Code. The Agent and GWNE shall each be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estates some or all of the Assets. Neither the Debtors, the Agent nor GWNE has engaged in any conduct that would cause or permit the Sale, the Agency Agreement, the GWNE Sale, the GWNE APA or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. Neither the Agent nor GWNE has violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, neither the Agent nor GWNE has acted in a collusive manner with any person or was controlled by any agreement among bidders. The Agent's prospective performance and payment of amounts owing under the Agency Agreement and GWNE's prospective performance and payment of amounts owing under the GWNE APA are each in good faith and for valid business purposes and uses.

M.      **Insider Status:** Neither the Agent nor GWNE is an "insider" or "affiliate" of the Debtors as those terms are defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between any of the Agent, GWNE and the Debtors.

N.      **Security Interests:** The liens provided for in the Agency Agreement and this Order to secure the obligations of the Debtors under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtors' estates. The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of Assets in partnership with a liquidation

agent. But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement. In addition, the secured lenders, which hold security interests in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in Paragraphs 26 and 28 of this Order.

O.    **Corporate Authority:**  The Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the Agency Agreement and the GWNE APA and all other transactions contemplated thereby (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement and assuming and assigning to GWNE the Assumed Contracts), and entry into the Agency Agreement and the GWNE APA have been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement and the GWNE APA, and (iii) have taken all actions necessary to authorize and approve the Agency Agreement, the GWNE APA and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein, in the Agency Agreement or in the GWNE APA, are required for the Debtors to consummate such transactions.

P.    **No Successor Liability:**  No sale, transfer or other disposition of the Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental,

product line, de facto merger or substantial continuity or similar theories. No sale, transfer, assumption and assignment or other disposition of the GWNE Assets pursuant to the GWNE APA or entry into the GWNE APA will subject GWNE to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. Neither the Agent nor GWNE is a successor to the Debtors or their estates.

Q.    **No Sub Rosa Plan:** Entry into the Agency Agreement, the GWNE APA and the transactions contemplated thereby neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. Entry into the Agency Agreement and the GWNE APA does not constitute a sub rosa chapter 11 plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.    **Motion Granted, Objections Overruled**

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any remaining objections to the Motion or the relief requested therein that have *and if not so resolved then a hearing will be sought* not been withdrawn, waived, settled, or agreed to be resolved post-Closing and all reservations of rights included in such objections are overruled in all respects and denied.

B.    **Agency Agreement Approved and Authorized**

3.    The Agency Agreement is approved pursuant to section 363 of the Bankruptcy Code. The Debtors are hereby authorized, empowered and directed to enter into and perform

under the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be binding on all parties (including (without limitation) the Debtors, the Committee, the Lender, any successor chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of the Court)) is hereby approved in its entirety and is incorporated herein by reference.  The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

4.      All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

5.      Subject to the provisions of this Order, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale in accordance with the Agency Agreement and the sale guidelines (the "GOB Sale Guidelines") attached hereto as Exhibit C, which GOB Sale Guidelines are hereby approved in their entirety.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agency Agreement and each of the transactions and related actions

contemplated or set forth therein.  Lynda K. Barr, the Debtors' Chief Financial Officer, is specifically authorized to act on behalf of the Debtors in connection with the Sale and no other consents or approvals are necessary or required for the Debtors to carry out the Sale, effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

7.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agent shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

**C.     Conduct of the Sale**

8.     Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, and subject to the conditions set forth in paragraph 26 of this Order, the Agent shall be authorized to sell the Assets to be sold pursuant to the Agency

Agreement free and clear of any and all Encumbrances, including, without limitation, the liens

and security interests, as the same may have been amended from time to time, of the Debtors'

secured lenders whether arising by agreement, any statute or otherwise and whether arising

before, on or after the date on which these chapter 11 cases were commenced, with any presently

existing liens encumbering all or any portion of the Assets or the Proceeds thereof (including, but

not limited to, the first-priority security interest of PNC) attaching only to the Guaranteed

Amount and, subject to the Agent's liens granted pursuant to the Agency Agreement and this

Order, other amounts payable to the Debtors under the Agency Agreement, with the same

validity, force and effect as the same had with respect to the assets at issue, subject to any and all

defenses, claims and/or counterclaims or setoffs that may exist. For the sake of clarity, however,

subject to the conditions set forth in paragraph 26 of this Order, nothing in this paragraph is

intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and

this Order, that attach to, among other things, the Proceeds of the Sale. Additionally, the GE

Capital Retail Bank private label credit card may not be used for transactions in connection with

liquidation or going-out-of business sales.

      9.     If any person or entity that has filed financing statements, mortgages, construction

or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests

in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by

the appropriate parties, termination statements, instruments of satisfaction, or releases of any

Encumbrances which the person or entity has with respect to the Assets, each such person or

entity is hereby directed to deliver all such statements, instruments and releases and the Debtors

and the Agent are hereby authorized to execute and file such statements, instruments, releases

and other documents on behalf of the person or entity asserting the same and the Agent is

authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the
release and termination of such interest. Each and every federal, state and local governmental
unit is hereby directed to accept any and all documents and instruments necessary or appropriate
to give effect to the Sale and related transactions.

10.     ~~All entities~~ *Any entity who has received notice of this sale and* that are presently in possession of some or all of the Assets or other
property in which the Debtors holds an interest that are or may be subject to the Agency
Agreement hereby are directed to surrender possession of such Assets or other property to the
Agent.

11.     Unless otherwise ordered by the Court, all newspapers and other advertising
media in which the Sale may be advertised and all landlords are directed to accept this Order as
binding authority so as to authorize the Debtors and the Agent to consummate the Agency
Agreement and to consummate the transactions contemplated therein, including, without
limitation, to conduct and advertise the Sale in the manner contemplated by the Agency
Agreement, including, without limitation, conducting and advertising of the Sale (at the
contractual rates charged to the Debtors prior to the Petition Date) in accordance with the
Agency Agreement, the GOB Sale Guidelines, and this Order.

12.     Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the
enforcement of any liability to a governmental unit under environmental laws or regulations (or
any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any
entity would be subject to as the owner, lessor, lessee, or operator of the property after the date
of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any
way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish
the obligations of the Debtors to comply with environmental laws consistent with their rights and

obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 15 hereunder. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

13.    Disputes Between Government Units and the Debtors or the Agent. To the extent that the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the

Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to Sale (collectively, the "Liquidation Laws"), the following provisions shall apply:

a.    Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the GOB Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 12 and 13 herein, are authorized to conduct the Sale in accordance with the terms of this Order and the GOB Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.    Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on:  (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, (iii) the division of consumer protection for each state where the Sale will be held; and (iv) the chief legal counsel for the local jurisdiction.

c.    To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the GOB Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter.

If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.      In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court. The Court grants authority for the Debtors and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency Agreement, and/or the GOB Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.      If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those

Paragraphs.  Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

f.        Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

14.      Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order and as otherwise agreed in writing between the Agent and GWNE, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement or the GOB Sale Guidelines, including, but not limited to, advertising the Sale as "store-closing" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall SCS Stores, and at enclosed mall SCS Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

15.      Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions.  The Agent

and landlords of the SCS Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the GOB Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 13 and 14.  In the event of any conflict between the GOB Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

16.    Except as expressly provided for herein or in the GOB Sale Guidelines or as otherwise agreed in writing between the Agent and GWNE, and except with respect to any Governmental Unit (as to which Paragraphs 13 and 14 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the SCS Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other liquidation sales at the stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

17.    Except as otherwise agreed in writing between the Agent and GWNE, the Agent shall have the right to use the Debtors' SCS Stores and all related store services, furniture,

fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the GOB Sale Guidelines and this Order and subject to Paragraphs 12 and 13 of this Order.

18.     Nothing in this Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sale in accordance with the Sale Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

19.     Pursuant to section 554(a) of the Bankruptcy Code, subject to the conditions set forth in paragraph 26 of this Order, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates in accordance with the terms and provisions of the Agency Agreement, without incurring liability to any person or entity; provided, however, that, unless the Agent otherwise consents, the Debtors may only abandon property located in any SCS Store on or after the applicable Sale Termination Date.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or other party in interest to object thereto.

20.     The Agent shall not accept as payment or credit, sell, transfer, distribute or otherwise use gift cards, store credit or customer deposits in any transaction including, but not limited to, any transaction conducted in connection with the Sale.  Except as otherwise provided in Paragraph 21 hereof, the Agent shall accept returns of merchandise sold by the Debtors prior

to the Sale Commencement Date for the first fourteen (14) days of the Sale only pursuant to the provisions of Section 9.5 of the Agency Agreement.

21.    All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors and/or the Agent shall accept returns of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

22.    During the Sale Term and subject to its written agreement with GWNE, the Agent shall be granted from GWNE a limited license and right to use the trade names, logos and such other items relating to and used in connection with the operation of the SCS Stores as identified in the Agency Agreement, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement; provided, however, that the Agent shall not receive Personally Identifiable Information from the Debtors.

23.    Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees. Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

24.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.  This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

25.    Subject to the terms set forth in the Agency Agreement, the GWNE APA and any written agreement between GWNE and the Agent, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Assets among the closing stores and the distribution center.  The Agent is authorized to sell the Debtors' furniture, fixtures and equipment and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement, subject to the terms set forth in the GWNE APA and any written agreement between GWNE and the Agent.

26.    At the Closing, the Obligations (as defined in the Final Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing on a Final Basis and (B) Utilize Cash Collateral of Pre-Petition Secured Parties on a Final Basis, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361,

362, 363(c), (d) & (e), 364(c), 364(d)(1) and 507(b) [Dkt. No. 89] (the "Final DIP Order")), including cash collateralization of the outstanding letters of credit and estimated legal fees, costs and expenses, shall be  paid in full in cash to the Lender on behalf of the Secured Parties (as defined in the Final DIP Order).  All liens on the Assets and GWNE Assets shall attach to the proceeds of the sale of the Assets and GWNE Assets in the same relative order of priority.

27.    Pursuant to the Order retaining Bayshore Partners as the Debtors' Investment Banker, simultaneous with the closing, the Debtors are authorized and directed to    place $946,520 in an escrow or segregated account for the benefit of Bayshore Partners.  This amount represents the estimated amount of Bayshore's Transaction Fee (as defined in the Bayshore Retention Order) based on the initial Consideration received by the Debtors in connection with the Sale and shall be held in escrow or segregated account pending final approval of Bayshore's Transaction Fee.  Upon final approval of Bayshore's Transaction Fee, this escrowed amount along with additional amounts which Bayshore may be owed due to additional Consideration being received by the Debtors in connection with the Sale, shall be immediately released to Bayshore free and clear of any interest, lien or claim that any creditor or claimant may posses in the relevant assets sold or proceeds received in connection with the sale..

**D.    Liens Granted To Agent**

28.    Pursuant to Bankruptcy Code section 364(d), and subject to the conditions set forth in paragraph 26 of this Order, Agent shall have, subject to Agent's obligations to pay the Guaranteed Amount, a valid, duly perfected first priority lien and security interest in the Assets, the Proceeds, and all proceeds thereof (specifically excluding the Guaranteed Amount, GWNE Assets and the Excluded Assets and proceeds thereof).  Effective upon payment by the Joint Venture of the Initial Guaranty Payment and issuance of the Letter of Credit, and subject to the

conditions set forth in paragraph 26 of this Order, Agent shall have a first priority, senior security

interests in and liens upon: (i) the Assets (other than the GWNE Assets); (iii) all Proceeds

(including, without limitation, credit card Proceeds); and (iii) all "proceeds" (within the meaning

of Section 9-102(a)(64) of the Uniform Commercial Code as the same may be in effect from

time to time in the State of Delaware) of each of the foregoing (all of which are collectively

referred to herein as the "Agent Collateral"), to secure the full payment and performance of all

obligations of the Debtors to Agent under the Agency Agreement (specifically excluding the

Guaranteed Amount, the GWNE Assets and the Excluded Assets and proceeds thereof). Subject

to the conditions set forth in paragraph 26 of this Order, upon entry of this Order, payment of the

Initial Guaranty Payment, and issuance of the Letter of Credit, the security interest granted to the

Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1

financing statements or any other documentation or the performance of any additional acts of

perfection. Without any further act by or on behalf of the Agent or any other party (including

(without limitation) the Lender and Company), the Agent's security interests and liens in the

Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of this Order,

perfected, and (iii) senior to all other liens and security interests, provided, however, that (i) until

the Debtors receive payment in full of the Guaranteed Amount due to the Debtors under the

Agency Agreement, the security interest granted to Agent by this Order and under the Agency

Agreement shall remain junior and subordinate in all respects to the security interests of Lender *and Subordinated Lender*

in the Agent Collateral but solely to the extent and amount of the unpaid portion of the

Guaranteed Amount and (ii) upon payment in full of the Guaranteed Amount and subject to the

conditions set forth in paragraph 26 of this Order, any security interest or lien of the Lender in

the Agent Collateral shall be junior and subordinate in all respects to the security interest *and*

*or Subordinated Lender*

liens of Agent.  Company shall cooperate with Agent with respect to actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under this Order and the Agency Agreement.  In the event of a Default by Company hereunder, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code as the same may be in effect from time to time in the State of Delaware.

### E.    GWNE APA Approved and Authorized

29.    The GWNE APA is approved pursuant to section 363 and 365 of the Bankruptcy Code.  The Debtors are hereby authorized and empowered to enter into and perform under the GWNE APA, and the GWNE APA (and each of the transactions contemplated therein (including without limitation, assuming and assigning to GWNE the Assumed Contracts) without further order of the Court)) is hereby approved in its entirety and is incorporated herein by reference. The failure to include specifically any particular provision of the GWNE APA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the GWNE APA and all of its provisions, payments and transactions, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

30.    The Debtors and GWNE are hereby authorized, pursuant to section 363(b) of the Bankruptcy Code, to take such actions as may be necessary and appropriate to implement the GWNE APA and to consummate the GWNE Sale without the necessity of a further order of this Court.

31.    The Debtors are authorized, pursuant to sections 105 and 363(b) and (f) of the Bankruptcy Code, to sell the GWNE Assets to GWNE upon delivery of the consideration specified in the APA and completion of all other deliveries required under the APA.

32.    Subject to the conditions set forth in paragraph 26 of this Order, the sale of the GWNE Assets shall vest GWNE with good title to the GWNE Assets, and shall be free and clear of any and all Encumbrances, other than as provided in the GWNE APA.    All such Encumbrances on or against the GWNE Assets shall attach to the amounts paid by GWNE under the GWNE APA, with the same force, validity, priority and effect as they now may have.

33.    The sale of the GWNE Assets to GWNE under the GWNE APA constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, but not limited to the laws of each state in which the GWNE Assets are located.    The sale approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

34.    The Debtors are hereby authorized to assume and to assign the Assumed Contracts pursuant to section 363 and 365 of the Bankruptcy Code.    Each of the Assumed Contracts set forth on Exhibit D attached to this Order, constitute executory contracts or unexpired leases within the meaning of section 365 of the Bankruptcy Code and will be deemed assumed and assigned by the Debtors effective upon the sale of the GWNE Assets.    The assumption of any liabilities under the Assumed Contracts by GWNE shall constitute a legal, valid and effective delegation of all liabilities thereunder to GWNE and shall divest the Debtors of all liability with respect to such Assumed Contracts.

35.    Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Debtors and GWNE (as governed by the GWNE APA) shall pay to the counter-parties to any Assumed

Contracts the Cure Costs, if any, set forth on Exhibit E hereto, such Cure Costs representing the maximum Cure Costs, if any, due to such counter-parties, at Closing of the sale of the GWNE Assets or such other amounts as the parties to such contracts shall have agreed to accept in lieu of such Cure Costs.  GWNE shall assume the obligations of the Debtors under the Assumed Contracts arising from and after the Closing and shall assume obligations for the pre-petition portion of the Cure Costs, but only as provided for in the GWNE APA.  Upon assumption and assignment of any Assumed Contract, the Debtors and the estates shall be relieved of any liability for breach of such Assumed Contract occurring after such assignment pursuant to section 365(k) of the Bankruptcy Code.

36.    The Assumed Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms.  Any provision in any Assumed Contract that purports to declare a breach or default as a result of a change of control in respect of the Debtors is unenforceable and all Assumed Contracts shall remain in full force and effect.  No sections or provisions of any Assumed Contracts that purport to (i) prohibit, restrict, or condition the Debtors' assignment of the Assumed Contract, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor party to such Assumed Contract; (ii) authorize the dissolution of any partnership or determination, cancellation, or modification of the partnership interest or Assumed Contract based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; or (iii) provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts upon the occurrence of the conditions set forth in subsections (i) and (ii) above, shall have any force and effect with respect to the GWNE Sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment

provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.  The non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and GWNE shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

37.    Each non-debtor party to an Assumed Contract shall, as of the Closing, be forever barred and enjoined from asserting against the Debtors, their bankruptcy estates, GWNE or any of the GWNE Assets: (a) any default, monetary or non-monetary, existing as of the Closing, or (b) any objection to the assumption and assignment of such non-debtor party's Assumed Contracts, whether or not such non-debtor party previously filed a proof of claim or files a proof of claim in the future.

38.    Subject to the conditions set forth in paragraph 26 of this Order, the Debtors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the GWNE Assets as such Encumbrances may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing liens, claims or encumbrances or other Encumbrances on the GWNE Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such liens, encumbrances, or other Encumbrances which the person or entity has with respect to the GWNE Assets, the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such GWNE

Assets prior to the Closing. Any liens, Encumbrances, interests, liabilities, obligations, claims, charges and interests of any kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp, transfer tax or similar tax arising from the transfer of the GWNE Assets to GWNE shall be filed against the Debtors' estates and shall not be asserted against GWNE. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all Persons and Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against GWNE to recover any claim which such Person or Governmental Unit has or may assert against the Debtors (as such claims exist immediately prior to the Closing). GWNE has not assumed or otherwise become obligated for any of the Debtors' liabilities other than as specifically set forth in the GWNE APA. Consequently, all holders of liabilities retained by the Debtors are hereby enjoined from asserting or prosecuting any claim, Encumbrance or cause of action against GWNE to recover on account of any liabilities other than those pursuant to the GWNE APA. Pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, all parties holding any claim, Encumbrance or cause of action against the Debtors, their estates or their assets, the Debtors' employees, former employees and members, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, including such officials maintaining any authority relating to environmental, labor and health and safety laws, and their respective successors or assigns, are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind or the employment of any process or any act to collect, offset or recover such claim, Encumbrance or cause of action against GWNE, or that seeks to impose liability upon GWNE or any affiliate, successor or assign thereof, or against the GWNE Assets or the Assumed Contracts,

under the laws of the United States, any state, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee liability or any liability for pre- or postpetition claim, Encumbrance or cause of action against the Debtors by reason of the transfer of the GWNE Assets to GWNE, except for the Assumed Liabilities, including, without limitation, pre- and postpetition claims, Encumbrances or causes of action of any federal, state or local governmental entities, of any current or former employee for claims arising out of employment and termination of employment, including, without limitation, claims for wages, bonuses, commissions, accrued vacation (except as provided in Section 9(a) of the GWNE APA), severance, continuation of coverage under COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without limitation, obligations in respect of retiree medical coverage or benefits.

39.    GWNE is hereby granted and is entitled to the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to any transfer of any Assumed Contracts as part of the sale of the GWNE Assets pursuant to section 365 of the Bankruptcy Code and this Order.

40.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the GWNE APA and this Order.

41.    The provisions of this Order shall be self-executing, and neither the Debtors nor GWNE shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Debtors and GWNE and each of their respective officers, employees

and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or GWNE deem necessary or appropriate to implement and effectuate the terms of the GWNE APA and this Order.

42.     GWNE is not a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity and GWNE shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates except as otherwise expressly provided in the GWNE APA.

43.     The GWNE APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and GWNE without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the GWNE APA and any related agreements.

44.     The failure specifically to include any particular provisions of the GWNE APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and GWNE that the GWNE APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.

45.     GWNE shall not be obligated to (i) continue or maintain in effect, or assume any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which either of the Debtors is a party or has any responsibility therefor, including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the

funding, investment or administration of any employee pension plan or the termination of any such plan.

**F.    Order Binding**

46.    This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

47.    This Order, the terms and provisions of the Agency Agreement and the terms and provisions of the GWNE APA shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, GWNE and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agency Agreement and the GWNE APA, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement and the GWNE APA, as well as the rights and interests granted pursuant to this Order, the Agency Agreement and the GWNE APA, shall continue in these or any

superseding cases and shall be binding upon the Debtors, the Agent, GWNE and their respective

successors and permitted assigns, including any trustees or other fiduciaries hereafter appointed

as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

Any trustee appointed in the Debtors' cases shall be and hereby is authorized to operate the

business of the Debtors to the fullest extent necessary to permit compliance with the terms of this

Order, the Agency Agreement and the GWNE APA, and the Agent, GWNE and the trustee shall

be and hereby are authorized to perform under the Agency Agreement and the GWNE APA

upon the appointment of the trustee without the need for further order of this Court.

### G.    Good Faith.

48.    Entry into each of the Agency Agreement and the GWNE APA is undertaken by

the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the

Bankruptcy Code, and Agent and GWNE shall each be protected by sections 363(m) and 364(e)

of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The

reversal or modification on appeal of the authorization provided herein to enter into the Agency

Agreement and/or the GWNE APA and consummate the transactions contemplated thereby shall

not affect the validity of such transactions, unless such authorization is duly stayed pending such

appeal. The Agent and GWNE are each entitled to all of the benefits and protections afforded by

sections 363(m) and 364(e) of the Bankruptcy Code. The transactions contemplated by the

Agency Agreement and the GWNE APA are not subject to avoidance pursuant to section 363(n)

of the Bankruptcy Code.

### H.    Other Provisions

49.    Each of the Agent and GWNE is a party in interest and shall have the ability to

appear and be heard on all issues related to or otherwise connected to this Order, the various

procedures contemplated herein, any issues related to or otherwise connected to the Sale, the Agency Agreement, the GWNE Sale and the GWNE APA.

50.    Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the GWNE APA.

51.    The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that the Creditors Committee and the secured lenders consent, which consent shall not be unreasonably withheld or delayed.

52.    Except with respect to any Governmental Unit (as to which the provisions of Paragraph 13 and 14 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order, the Agency Agreement or the GWNE APA, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sale, (iii) any other disputes related to the Sale, and (iv) to protect the Debtors, GWNE and/or the Agent against any assertions of Encumbrances. No such parties or person shall take any action against the Debtors, the Agent, GWNE, the landlords or the Sale until this Court has resolved such dispute. This Court shall hear the request of such parties or

persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

53.     Notwithstanding Bankruptcy Rules 4001, 6004 and 6006, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors, the Agent and GWNE are free to perform under the Agency Agreement and the GWNE APA at any time, subject to the respective terms thereof. ·

- see attached inow +

Dated: December 5, 2013
        Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

Notwithstanding any other provision in this Order, the sum of $100,000.00 from the proceeds of the sale of any of the debtors' assets located in the State of Texas shall be set aside by the Debtors in a segregated account as adequate protection for the secured claims of the Local Texas Tax Authorities and Collin County, Texas prior to the distribution of any proceeds to any other creditor. The liens of these Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of these Texas Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of these Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon agreement between these Texas Tax Authorities and the Debtors, or by subsequent order of the Court, duly noticed to these Texas Tax Authorities.